(134 App. Div. 410.)

MERCANTILE TRUST CO. v. GIMBERNAT et al.

(Supreme Court, Appellate Division, First Department. November 5, 1909.)

USURY (§ 117*)—USURIOUS TRANSACTIONS—LOANS OR SALES.

In an action to determine conflicting claims to a fund held by plaintiff under a testamentary trust, a part of which respondent claimed under alleged sales of the legacy by the beneficiary, evidence *held* to show that the alleged sales were in fact loans to the beneficiary, so that the law of usury would apply to them.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340; Dec. Dig. § 117.*]

Appeal from Special Term, New York County.

Action by the Mercantile Trust Company, as trustee, against Jules R. Gimbernat, impleaded with another. From a judgment against the defendant impleaded, said defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and SCOTT, JJ.

Harry Eckhard, for appellant.
Alfred G. Reeves, for respondent.

SCOTT, J. This action is brought to determine conflicting claims to a fund, amounting to about $11,000, now held by the plaintiff as

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trustee under the last will and testament of Jules R. Gimbernat, deceased. By the judgment appealed from the respondent, Henry M. Black, has been awarded substantially the whole sum by virtue of three certain assignments made by the appellant, Jules R. Gimbernat. The elder Gimbernat, father of the appellant, had by his will created a trust fund for the benefit of the appellant, with a provision that the principal should be paid over to him at certain ages; one-fourth being payable when he should arrive at the age of 25 years. Soon after he came of age, the younger Gimbernat, being desirous of raising money, applied to the respondent, Black, for a loan of $3,000, and after some negotiations Black agreed to make the loan, and took from Gimbernat, as security therefor, an assignment, dated May 27, 1901, of all of the assignor's right, title, and interest in the aforesaid fund to the extent of $3,000, with interest until paid, to be paid from the legacy which would become due on December 2, 1904. The document also directed plaintiff, as trustee, to pay the said principal sum when payable, and to pay the interest and the annual life insurance premium upon a policy on Gimbernat's life out of the income payable to Gimbernat under his father's will. This paper named as assignee one Richard M. Bell, through whom Black now claims as assignee. Out of this sum of $3,000 Gimbernat received only $2,073.50, the balance being retained by Black to cover the expenses of the loan, including a wholly unexplained charge of $500 for "legal expenses and brokerage," although it is made perfectly clear that no legal expenses whatever were incurred.

It is true, as claimed by respondent, that under the terms of the trust the direction to the trustee to pay the interest, as it accrued, out of income, was ineffectual; but the assignment was of $3,000 and interest, and it is by no means clear that the lender might not have collected the interest, as well as the principal, when the legacy became payable. On January 31, 1902, Gimbernat applied for a further loan of $5,000. Black refused to advance the money in the form of a loan, but offered to purchase an interest in the legacy to the extent of $5,000, and the transaction took this form. The assignment of $5,000 was identical in form with the former assignment of $3,000, except that it did not provide for the payment of interest. It was also made to Bell, although Black testified that he and Bell were joint purchasers; he contributing $3,000 and Bell contributing $2,000. Gimbernat received $2,984, being charged about $1,200 for the advance. Black testifies that he made this amount up as follows:

"$240.50 premium on the first policy issued, $180 each year on the $3,000 (first loan), and then we would have to pay the premium of $159 on the Equitable policy to take care of this loan, making a total of about $1,200, leaving $3,800 for Mr. Gimbernat to sell. This amount he desired to sell would not mature for two years, and we were willing to buy it for $2,984."

The Equitable policy was one taken out to secure the second assignment. After the legacy became due, Black allowed the policy to lapse, collecting the surrender value. Thus Black required Gimbernat to pay out of the second advance the carrying charges on the first loan, part of which, at least, seem to have been deducted from the $3,000 covered by the first assignment, and then, after making every deduction

he could think of, paid $816 less than the remaining value. The third assignment was dated March 5, 1902, and was identical with the second, being in form an absolute assignment of $2,000 out of the legacy when due. This was also made to Bell, although Black testifies that he was the sole purchaser, paying $1,000 for it. On January 16, 1905, Bell assigned to Black all his interest in the legacy represented by these three assignments.

It is impossible to doubt that all these transactions were similar, and, whatever their form, were nothing less than loans, although two of them are now said to have been sales. This view is confirmed by three releases prepared to be given to the Trust Company and signed by Gimbernat, Black, and Bell. These were prepared by Black, or at his direction, and each one recites that the assignments were given "as security for the payment to him (Bell) by the said Gimbernat of the sums of $5,000, $3,000, and $2,000, respectively." It is conceded that Gimbernat received only $6,057.50 for the assignments of a $10,000 interest in the legacies. On December 3, 1904, Gimbernat, through his attorney, while asserting that the assignments were void for usury, offered to allow them to the extent of the money he received, with interest and necessary disbursements. This offer was refused.

It seems to us that it is quite impossible to find that these transactions were other than covers for usurious loans. It would serve no useful purpose to review the testimony and point out the reasons which lead to this conclusion. The devices and methods by which it was sought to cover up the real nature of the transactions have been used many-times before, and have seldom, if ever, successfully passed the scrutiny of the courts. They have not even the merit of novelty or of plausibility.

It follows that the judgment must be reversed, and a new trial granted, with costs to the appellant against the respondent, Henry M. Black, to abide the event. All concur.