WETZLAR v. WOOD et al.

SAME v. NEW YORK FINANCE CO. et al.

(Supreme Court, Appellate Division, First Department. March 24, 1911.)

1. USURY (§ 117*)—SUFFICIENCY OF EVIDENCE.

Evidence *held* to show that assignments by plaintiff of his interest in certain estates were mere cloaks to cover usurious loans made by defendants.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340; Dec. Dig. § 117.*]

2. ESTOPPEL (§ 116*)—BURDEN OF PROOF.

The burden is on the party pleading an estoppel to establish it.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 306; Dec. Dig. § 116.*]

Appeal from Special Term, New York County.

Actions by Julius G. Wetzlar against Catherine Stewart Wood and others, and by said Wetzlar against the New York Finance Company and others. From the judgments, plaintiff and said Wood appeal. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Kendall & Herzog (Henry L. Scheuerman, of counsel, and Paul M. Herzog, on the brief), for appellant Wetzlar.

C. Andrade, for appellant Wood.

William H. Cochran, for respondent New York Finance Co.

MILLER, J. The plaintiff's father, Gustave J. Wetzlar, died on the 8th day of November, 1898, leaving a last will and testament which was admitted to probate by the Surrogate's Court of the county of New York, whereby he devised and bequeathed one-third of his residuary estate, amounting to over $434,000, to trustees and directed them to pay over one-half thereof to the plaintiff, when he should attain the age of 25 years. The plaintiff's grandmother, Charlotte Wetzlar, died in January, 1902, leaving a last will and testament whereby she bequeathed to the plaintiff one-eighth of $100,000. The plaintiff became 25 years of age on August 23, 1908. On March 31, 1905, he executed two assignments to the defendant, the New York Finance Company, one of $8,000 of his interest in said two estates, nominally in consideration of the payment of $4,000, and one of $2,500 of said interest, nominally for services rendered. On April 15, 1905, he executed another assignment of $9,500 of said interest, nominally for $5,000, and on February 15, 1907, he executed another assignment of $11,000 of his interest in his father's estate, nominally for $6,000, but which was modified by an instrument of July 22, 1907, so as to assign an interest only to the extent of $4,590 for the sum of $2,500. These two actions involve the validity of said assignments; the plaintiff asserting that they were mere cloaks to cover usurious loans, and the respondents asserting that the transactions, evi-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

denced by them, were purchases pro tanto of the plaintiff's interest in said estates.

The transactions involved are somewhat complicated, and it will be impossible, without unduly extending this opinion, to do more than refer to the salient features of the case which lead us to differ with the learned trial justice on the facts.

The said defendant undertook to establish its version of the transactions by the testimony of two of its officers, Charles H. Burr and Arthur W. Depue. Burr testified that the plaintiff proposed to sell what the witness called a $25,000 "charge" on his interest in his father's estate for $15,000, but that $14,000 was agreed upon as the purchase price; that the plaintiff "got $14,000, no more and no less, actual spot cash in place of a charge to the extent of $25,000 payable out of this estate when finally settled." Depue testified that $14,000 was agreed upon as the purchase price of said $25,000 interest, and that it was understood that said defendant was to borrow the money and pay the purchase price as soon as possible. Both Burr and Depue testified that it was understood that $5,000 of the purchase price was to be obtained from one Banes.

On March 31, 1905, the date of the earliest assignments in question, the plaintiff made his promissory note for $5,000, payable to the order of said Banes as trustee, and to secure the payment thereof he executed an assignment to said Banes of one-third of all his interest in his father's estate. Burr testified that the services, for which the $2,500 assignment aforesaid was given, were the services of said defendant in procuring and guaranteeing the repayment of that loan. On said March 31st, said defendant made its note for $9,000, payable to the order of the defendant Wood, and, to secure the payment thereof, assigned to her its interest in the said estates under the two assignments, executed to it on that date. Although Burr's memory was rather hazy as to precisely when and how the said sum of $9,000 was advanced by the lender, he asserted that he procured that sum through one Gummey, a real estate broker of Philadelphia, on or soon after said date. It thus appears that, at the time of the first assignment, the defendant New York Finance Company had either obtained or bargained for loans from Banes and the defendant Wood of $14,000, the exact amount of the purchase price, claimed to have been agreed upon. Naturally, then, the plaintiff would have assigned to the defendant the New York Finance Company a $25,000 interest in his share of said estates and would have received the purchase price, $14,000, a transaction which, though unconscionable, would have had the merit of directness. As a matter of fact, it is impossible to square the testimony of Burr and Depue with the established facts. Excluding the Banes transaction, the assignments amounted to $22,000 for a consideration of $11,500; the last one not being made until July 22, 1907. Including the Banes transaction, the total interest assigned was $24,500 absolutely and a one-third interest as collateral, and the consideration was $16,500. Or taking the transactions of 1905 alone, the assignments, excluding the Banes transaction, amounted to $17,500 for the recited consideration of $9,000,

and, including the Banes transaction, they amounted to $20,000 absolutely and a one-third interest as collateral for a consideration of $14,000.

Burr did undertake to say that the original proposition was modified so as to become, in addition to the Banes transaction, a sale "of $17,500 for $9,000, divided afterwards into two." An explanation for dividing it "into two" was required by the fact that the purchaser, according to Burr, immediately borrowed the entire purchase price upon the two assignments, amounting to only $10,500. It is not pretended that the $5,000 loaned by Banes was paid directly to the plaintiff. All payments to him were made by the checks of Depue. Instead of there being two payments, one of $5,000 and one of $9,000, there were 21 payments from March 22 to July 19, 1905, in sums ranging from $15 to $2,500, aggregating $13,699.10; but of the latter sum only $10,220.50 was actually received by him, the remainder being used to pay insurance premiums, so-called commissions, and advances by Depue and others, connected with the transaction, at a discount of 33⅓ per cent. On the 17th of March, 1905, the plaintiff had applied for and obtained policies of life insurance, amounting to $25,000, which were assigned to the said Finance Company. On the 19th of July, 1905, the Finance Company wrote the plaintiff a letter in confirmation of an "oral understanding that in the event that all the moneys called for by the several transactions between you and this company and also with Mr. Robert C. Banes, trustee, etc., are fully paid and satisfied, out of the respective estates of Gustave J. Wetzlar, deceased, and Charlotte Wetzlar, deceased, or otherwise, by you, that then we will release or cause to be released to you the several insurance policies taken out on your life in these matters." The plaintiff's share in his grandmother's estate was paid to him in April, 1906. He paid $7,000 to the Finance Company and retained the balance.

The fact that a policy of life insurance was procured at the expense of the plaintiff and assigned to the Finance Company, together with the fact that the assignments covered the plaintiff's interest in his grandmother's estate, strongly tends to prove that a loan, not a sale of a specified share of his interest in his father's estate, was intended. The interests assigned were thus described:

"A certain part or portion to the amount or extent of ——— ($———) dollars, of all and every my estate, right, title and interest * * * in and to the residuary estate of the aforementioned Gustave J. Wetzlar * * * and also in and to the said estate of the aforementioned Charlotte Wetzlar."

According to the defendant's theory, the plaintiff sold for $14,000 an interest in his share of his father's estate to the extent of $25,000 payable in three years upon the contingency of his surviving, which contingency was eliminated, so far as the vendee was concerned, by an insurance for which the plaintiff paid the premiums; and, to enable the vendee to borrow the purchase price, the plaintiff made his note for $5,000, directly to the lender, secured by an additional assignment of one-third of all his interest in his father's estate, and included in the assignment to his vendee his interest in his grandmother's estate,

which amounted to $12,500 and was then presently payable. Deducting the Banes loan, the sums for insurance premiums, commissions, and discounts on advances as aforesaid, the net result to the plaintiff of the entire transactions was at the outside less than $6,000. The Finance Company has already been paid $7,000, and the judgments appealed from require the trustees of the father's estate to pay $9,847.50 to the defendant Wood, and $8,801.25 to the defendant Finance Company, and to retain one-third of the entire interest as security for the note of Banes, who is not even a party to the action.

Every time an assignment was executed by the plaintiff, Burr or Depue procured him to verify an affidavit setting forth his interest in the said estates, that he had not transferred it, and that there were no liens or incumbrances thereon, and that it was made for the purpose of inducing the New York Finance Company to purchase a certain part of his interest. The learned trial justice was of the opinion that the plaintiff was concluded by these affidavits upon the proposition that the transactions were purchases; but the successful effort to complicate the transactions and the procurement of affidavits in advance to support them have exactly the opposite effect to that intended. Legitimate transactions are conducted with more directness and without being bolstered up by affidavits. All of the surrounding circumstances tend to corroborate the plaintiff. The story of Burr and Depue is demonstrably false. The documents themselves furnish strong internal evidence that they were mere covers for usurious loans, and, even if there was a doubt as to whether the transaction was a purchase and sale or a loan, its unconscionable character should resolve that doubt in favor of a loan.

It remains to consider the claim of estoppel of the defendant Wood. She says that she intrusted $12,000 to the said Gummey to invest for her; that she knew nothing about the $9,000 loan until after it was consummated. The claim of estoppel, therefore, depends upon whether Gummey made the loan as the agent for said defendant in reliance upon statements in the plaintiff's affidavit to the effect that the transaction was a purchase and sale. Gummey was not produced as a witness. Our knowledge of what he knew about the transaction must be derived from the testimony of Burr, who says he told Gummey all about it. If Burr explained the transaction to Gummey as he explained it upon this trial, it is difficult to believe that Gummey was misled by the plaintiff's affidavit, for it appears that he was familiar with the kind of business transacted by the New York Finance Company. Moreover, the evidence fails to show that he advanced $9,000 of the defendant's or of anybody else's money. A careful examination of Burr's testimony leaves the subject of Gummey's relation to the transaction and of the amount of his advances, if any, very much in doubt. The defendant Wood may have been defrauded by Gummey, but that does not give her a cause of action against the plaintiff. The burden is upon the party pleading an estoppel to establish it.

The judgments should be reversed, and a new trial granted, with costs to abide the final award of costs. All concur.