OTTEN v. FREUND et al.

(Supreme Court, Appellate Division, First Department. ˙ May 3, 1912.)

Usury (§ 117*)—Usurious Transaction—Loans.

In an action to declare a transaction usurious and to restrain the enforcement of agreements made thereunder, evidence *held* to show that papers showing an alleged purchase of a legacy of $5,000 for $2,000, secured by an assignment of a policy of insurance on plaintiff's life for $5,000, were executed to avoid the usury law.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340; Dec. Dig. § 117.*]

Appeal from Special Term, New York County.

Action by William Otten against Arthur Freund and Henry H. Otten, as executor and trustee under the last will and testament of Henry Otten, deceased. From a judgment of Special Term, dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and MILLER, JJ.

Early & Carstarphen, of New York City (Frank E. Carstarphen, of New York City, of counsel, and Francis X. Mooney, of New York City, on the brief), for appellant.

Boudin & Liebman, of New York City (Louis B. Boudin, of New York City, of counsel), for respondents.

CLARKE, J. The complaint alleges the death of the plaintiff's father on June 21, 1897, leaving a will under which his mother and a brother, Henry, were made executors and trustees. The will provided that the widow should have a life estate in the premises occupied by the testator in his lifetime. All the rest of the testator's property was given in trust to the executrix and executor named, to keep the same invested during the lifetime of the widow and to pay her the net income, and upon her death to divide the same amongst such of his' children as he should leave surviving, share and share alike. It further provided that, if any of his children should attain the age of 28 years before the death of his wife, the trustees should pay to each child attaining said age, before her death, $5,000, to be considered an advance on account of the distribution to take place upon the death of said wife. It further provided that the interest and estate given to the children by the will should vest no interest in them in the corpus of the estate, which could be conveyed by them or reached each by their creditors until the same is paid over to them at the periods in said will mentioned.

The complaint alleges that upon the death of the father the plaintiff and his mother and brothers and sisters inherited all his estate and were entitled to the possession thereof upon the death of their mother; that in or about the month of July, 1906, plaintiff applied to the defendant Freund for the purpose of obtaining a loan of some money upon his interest in said estate, and such negotiations were had in respect to said loan that on or about August 2, 1906, Freund agreed to

loan and advance the sum of $2,000 upon this plaintiff agreeing to pay him the sum of $5,000 out of his portion of the said estate, and an oral agreement to that effect was entered into; that on August 2, 1906, said defendant drafted a written agreement by which it was provided that this plaintiff assigned to the said Freund an interest in said estate to the extent of $5,000, and in pursuance of said oral agreement the said loan of $2,000 was made to this plaintiff, and no more, and that out of said moneys so loaned to him he paid a commission of $200, leaving the net amount advanced to him $1,800; that pursuant to said agreement plaintiff insured his life for the benefit of Freund, and assigned the policy to him, and paid the full premium for the entire term of such life insurance; that by said agreement so entered into it was corruptly, and against the form of the statute in that case made and provided, agreed by and between this plaintiff and the defendant Freund that said defendant should lend and advance the sum of $2,000, which was at that time advanced, and that for said loan and forbearance there should be by said defendant reserved, as a corrupt and usurious bonus for said loan and forbearance, the sum of $5,000 for the $2,000 which the said defendant agreed to loan to the plaintiff; that in and by said agreement the said defendant is authorized to collect the said $5,000 out of the first moneys arising and payable to the plaintiff of plaintiff's share in said estate; and plaintiff claims and insists that, because of said corrupt and usurious agreement, the said instrument of assignment executed by the plaintiff is usurious and void. It is further alleged that plaintiff's mother died September 19, 1908, wherefore plaintiff demanded that the said agreement may be adjudged usurious and void, that Freund be compelled to deliver up said agreement to be canceled, and that the same be discharged of record, and that said Henry Otten, as executor and trustee, and the said Freund, may be restrained and enjoined from enforcing said agreement until the final determination of this action.

It appeared upon the trial that the negotiations were had with one Louis Wertheimer, an attorney to whom the plaintiff was introduced by William B. Wolfe. The plaintiff testified that he met Wertheimer at his office some time prior to August, 1906. On the occasion of the first interview Wertheimer said:

" 'My client will loan you $1,500 for your interest in the estate of $5,000.' This I refused, and he said that he would have another conference with his client, and see if they would do any better."

At the second interview Wertheimer said:

" 'My client has agreed to make you a loan of $2,000, out of which you must pay a life insurance on a policy during the time up to when you are to become 28 years of age and you are to receive these moneys. In case of your death during that interval, we would lose the money, unless we were secured by an insurance policy.' * * * Before any deductions were made, $2,000 was turned over to me. It was handed to me in money, cash, bills, by Mr. Wertheimer. * * * He never mentioned Arthur Freund until the transaction was actually completed and the papers were put before me. Then he told me he was acting on behalf of Arthur Freund, who was the party who was making the loan. * * * With reference to making application for an insurance policy on my life in the Penn Mutual Life Insurance Company, Mr. Wolfe took me to the Penn Mutual office, to the doctors, and had me passed

upon. * * * I paid the amount of the premium for five years, $211.50, out of the $2,000, to Mr. Wertheimer. I did not receive any additional or others sums of money, from Mr. Wertheimer or Mr. Freund, than the amount I have testified to."

The policy of insurance was in the sum of $5,000 for the period of 4⅚ years from July 3, 1906, or until May 3, 1911, payable to plaintiff's executors, administrators, or assigns. This policy, dated July 3, 1906, was issued for a single premium of $211.50. Attached to the same is a copy of the application for insurance covered by the policy, which application bears date July 2, 1906. There is attached a receipt showing the payment of the premium on July 5, 1906, and also a duplicate absolute assignment of the said policy and all rights thereunder, executed by the plaintiff to the defendant, and bearing date August 2, 1906, and a letter from the actuary to the general agent, dated August 4, 1906, showing the receipt by the company of the original assignment of the policy and the filing of the formal application for the policy with the company. The plaintiff also executed an affidavit, verified August 2, 1906, which he delivered to Wertheimer, in which he states that he became 23 years of age on the 22d of April, 1906, recites the death of his father and his will, and enumerates certain real estate composing his estate, and stated that his estate is absolutely solvent, that all claims against the same, excepting expenses of administration have been paid, and there is sufficient left to pay all legacies as they shall become due; that he had not in any wise disposed of or hypothecated the whole or any portion of his interest, and concluding:

"I make this deposition as an inducement to Arthur Freund, of the borough of the Bronx, in the city of New York, to purchase from me the right to receive the first $5,000 payable to me under this last will and testament, and I know that he relies upon the truth of these statements as an inducement for paying the consideration for such a transfer."

Wertheimer claims that he refused to make any loan:

"I told him [referring to Wolfe] that I could not get anybody to lend anything on it. He asked me why. I told him we did not believe that we would be able to collect our income, our interest, and that it would simply mean litigation, foreclosure, but that, if his client cared to sell the legacy, and would make provision that in case the legacy should fail by reason of his death before his mother's death, or if the legacy should fail because the mother died before he became 28 years of age, as provided for in the will, that he would then sell an equal share of the legacy, of his share, * * * we would buy that legacy out."

He claims that the transaction was a purchase, and that, as there was no loan, there could be no usury. There is no essential difference between this transaction and those considered by this court in Mercantile Trust Co. v. Gimbernat, 134 App. Div. 410, 119 N. Y. Supp. 103, and Wetzlar v. Wood, 143 App. Div. 311, 128 N. Y. Supp. 501. This young man of 23 got a loan of $2,000, for which he agreed to pay $5,000, and took out and assigned a policy of life insurance, upon which he paid the premium, as security. The papers were obviously prepared to avoid the statute. Mr. Justice Miller in the Wetzlar Case said:

"The fact that a policy of life insurance was procured at the expense of the plaintiff and assigned to the finance company, together with the fact that the

assignments covered the plaintiff's interest in his grandmother's estate, strongly tends to prove that a loan, not a sale of a specified share of his interest in his father's estate, was intended."

Said Mr. Justice Scott in the Mercantile Trust Company Case:

"It seems to us that it is quite impossible to find that these transactions were other than covers for usurious loans. * * * The devices and methods by which it was sought to cover up the real nature of the transaction have been used many times before, and have seldom, if ever, successfully passed the scrutiny of the courts. They have not even the merit of novelty or plausibility."

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.