Civ. Proc. § 2369; Hinkle v. Zimmerman, 184 N. Y. 114, 76 N. E. 1080.

[2] The case appears to be a proper one, however, in which to direct a rehearing before the same arbitrators, as authorized by section 2374, Code Civ. Proc. Their failure to take the prescribed oaths did not, under the circumstances, indicate partiality or incompetence.

The order appealed from will therefore be modified accordingly, with $10 costs and disbursements to the appellant. Settle order on notice.

---

HARTLEY v. EAGLE INS. CO. OF LONDON, ENGLAND. (No. 7076.)

(Supreme Court, Appellate Division, First Department. April 9, 1915.)

USURY ☞31—USURIOUS TRANSACTIONS—RIGHTS OF PARTIES.

 A testamentary beneficiary had an interest in testator's estate worth at least $43,750, subject to the life estate of testator's widow, having a life expectancy of 8.48 or 9.44 years. The beneficiary assigned $18,400 of his interest to a third person for an advance of $9,500. The intention of the beneficiary and third person was that the third person should receive out of the beneficiary's share in the estate $18,400 on the death of the widow. Mortality tables showed that the amount assigned exceeded the amount advanced, with interest, by over $3,000. *Held*, that the transaction was usurious and void, and the instrument of assignment and mortgage to secure the assignment executed in consummation thereof were void, and the beneficiary, relying on the illegality of the transaction because of usury, was entitled to judgment canceling the instruments, especially in the absence of any offer by the third person to a consent judgment for the sum advanced.

 [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 74, 78–81; Dec. Dig. ☞31.]

Appeal from Trial Term, New York County.

Action by Walter M. B. Hartley against the Eagle Insurance Company of London, England. From a judgment on a decision declaring certain transactions void for usury, and directing certain instruments to be delivered up and canceled, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Sullivan & Cromwell, of New York City (Francis D. Pollak, of New York City, of counsel, and Edward Bruce Hill, of New York City, on the brief), for appellant.

Fowler & Lesser, of New York City (Joseph M. Lesser, of New York City, of counsel), for respondent.

CLARKE, J. William Knight died on January 3, 1901, leaving a will executed October 27, 1896, which was duly probated. After providing for his debts and testamentary charges the will provides:

"Item: I give, devise and bequeath all my estate, property and effects of every name, nature and description and wheresoever the same may be situate, to my executrix and executors hereinafter named, in trust, nevertheless, to collect the rents, income and profits arising therefrom, and after paying all taxes, assessments, water rents, insurance and repairs to pay the balance of said income to my wife, Mary E. Knight for and during the term of her natural life unless she shall remarry as hereinafter specified.

"Item: Subject to the estate herein given to my wife, I give, devise and bequeath all my estate, property and effects of every name, nature and description to my four children, namely: Thomas George Knight, Janet Brill Hartley, formerly Janet Brill Knight; Susie Phillips, formerly Susie Knight, and Anna C. Knight, equally share and share alike."

At the date of the death of William Knight three of his children, Mrs. Phillips, Mrs. Rudolph, and Thomas George Knight survived him. Mrs. Janet Brill Hartley had died intestate several years prior to her father, on or about February 17, 1897, and had left her surviving as her sole heirs at law and next of kin two sons, William Knight Hartley and the plaintiff, Walter M. B. Hartley. On June 1, 1897, William Knight Hartley died intestate, leaving him surviving his only heir at law and next of kin, plaintiff herein. Plaintiff therefore succeeded to and became vested with the undivided one-quarter interest or share of the estate of his grandfather, William Knight, which would have gone to his mother, had she survived him, subject only to the life interest therein of the widow of William Knight, who was born on January 24, 1836. The total net value of the real and personal property left by William Knight, after the payment of all his debts and the expense of the administration, was at least $175,000. Plaintiff's share therein, an undivided one-fourth thereof, is at least $43,750, subject to said life estate.

The court has found that in 1905 plaintiff was 23 years of age, of very poor business ability, easily influenced by others, in debt, and without work; that in the spring of that year he entered into negotiations with William J. Jenner, who was conducting business also under the name of W. J. Jenner & Co., for a loan of money secured by his share or interest in the estate of his grandfather. On or about June 2, 1905, he entered into a contract with said Jenner for a loan of $5,000, and agreed to pay the party making the said loan, on the death of his grandmother, out of his share or interest in his grandfather's estate, the sum of $18,430; that through Jenner, Julian B. Shope, and others the defendant herein agreed to make a loan or advance of $9,500 to the plaintiff upon the agreement of the plaintiff to pay for said loan on the death of his grandmother, Mrs. Mary E. Knight, out of his share in the estate of his grandfather, the net sum of $18,400, with interest thereon at 6 per cent. from the death of his grandmother, and the plaintiff agreed to secure said $18,400 payment by an assignment of that amount to the defendant out of his share in his grandfather's estate, and further by mortgage on plaintiff's undivided one-fourth interest in the real estate owned by his grandfather's estate; that on the day of closing Shope retained, from the draft of $9,500, $3,500, and the plaintiff therefore actually received out of the $9,500, which was in form paid to him on the defendant's behalf, only the sum of $6,000; that in June, 1905, Mrs. Knight, the life tenant, was 69 years old, and had an expectancy of life from 8.48 years, under the American Experience Table of Mortality, to 9.44 years, under the Carlisle Tables of Mortality; that under the Carlisle Tables the present value in July, 1905, of the $18,400 which plaintiff attempted to assign, subject to the life estate of his grandmother, figuring interest at 6 per cent. was $11,470.19; that there was no intention or desire on the part

of either the plaintiff or defendant to provide for the repayment by. the plaintiff to the defendant of merely the sum of $9,500, with legal.interest thereon up to the time of the death of the plaintiff's grandmother, but, on the contrary, the clear and express intention of both plaintiff and defendant was that the defendant should receive out of the plaintiff's share in his grandfather's estate the full sum of $18,400 on the death of his grandmother and also 6 per cent. interest thereon from the date of her death; that $9,500 cash, with interest at 6 per cent. from July 20, 1905, for the period of expectancy of the life of plaintiff's grandmother, the life tenant, according to the Carlisle Tables of Mortality, would have amounted to only $15,240; that the amount attempted to be assigned exceeded the amount loaned, with interest at 6 per cent. by $3,160.

And the court found as conclusion of law that the. transaction whereby $9,500, at most, was paid to the plaintiff on July 20, 1905, was a loan of that amount by the defendant to the plaintiff, under an arrangement whereby the plaintiff was to repay the defendant more than the full amount of said loan and the maximum interest thereon, was usurious, null, and void, and that the instruments of assignment and transfer and mortgage to secure said assignment, all executed and delivered in consummation of said usurious loan, are all, and each of said instruments is, illegal, null, and void. And judgment was directed for the plaintiff, directing the delivery of said instruments to be canceled and discharged of record, and restraining the defendant from proceeding in any manner against the plaintiff by virtue of said instruments.

The defendant, appealing from the judgment, makes no attempt to justify the transaction, but claims that the transaction in this case and the documents executed were exactly the same as in Hall v. Eagle Insurance Co., 151 App. Div. 815, 136 N. Y. Supp. 774, affirmed 211 N. Y. 507, 105 N. E. 1085. "In every particular the cases are identical, so far as what was done and intended by the parties was concerned; and, this being so, the decision in the former case is conclusive to this." And therefore it claims that the judgment should have declared the instrument an equitable mortgage, and have provided for the surrender and cancellation thereof upon the payment by the plaintiff of the original sum received by him and simple interest to the date of judgment.

In the Hall Case, supra, the court held that there could be no question but that the transaction was essentially a loan of money. After citing the usury statutes and various authorities the court said:

"We have here the advance of a sum of money by the defendant to the plaintiff, and an arrangement by which the defendant was absolutely assured the repayment of the money advanced out of the plaintiff's property, which was ample security for its repayment. * * * Treating this transaction, therefore, as a loan or advance of the money, to be repaid to the defendant, the question presented is whether it did provide or intended to provide for the payment of a greater sum or greater value for the loan or forbearance of any money above 6 per cent. per annum. * * * The plaintiff's mother had an expectation of life of about 13 years; and if she lived out that period, the amount received by the defendant would be largely in excess of the interest allowed by statute. There was, of course, the possible contingency that she would live longer than the expectation of life; but it was early determined by the courts of England that such a possibility would not take the case out.

of the statute prohibiting usury. * * * If, therefore, this arrangement between the parties is to be construed as an absolute obligation on the part of the plaintiff that the sum of $19,000 should be repaid to the defendant as interest for the advance of the sum of $15,500, I think it clear that the contract would be within the statute, and the whole transaction and the instruments delivered under it void."

Applying that reasoning to this case, it is clear that the judgment appealed from was right. In the Hall Case the instruments were not declared null and void, for the reason that the complaint therein alleged that the indentures or instruments were executed and delivered by the plaintiff to the defendant to be held by it only as security for the purpose of securing payment to the defendant of the said sum of $15,500, with interest thereon to the date of payment, and that it was understood and agreed by the parties that said indentures and instruments were made and delivered only as such security, and that the plaintiff had duly tendered to the defendant the sum, with interest at 6 per cent. from the time it had been received, but the said defendant declined said offer, and plaintiff demanded judgment in the alternative, either that the judgment declare that the loan was made as result of a usurious and void contract, or that the said instruments may be declared and adjudged to have been and to be a mortgage given as collateral security for the payment of $15,500, with legal interest, and that the defendant be directed to accept said sum of money and that the instruments be canceled. But no such case is presented here. The complaint proceeds flatfooted upon the ground of a corrupt and usurious contract, and the judgment demanded is appropriate to such allegations. The findings of the court support the complaint and the judgment follows as a matter of law.

In Mercantile Trust Co. v. Gimbernat, 134 App. Div. 410, 119 N. Y. Supp. 103, Wetzlar v. Wood, 143 App. Div. 311, 128 N. Y. Supp. 501, and Otten v. Freund, 150 App. Div. 434, 135 N. Y. Supp. 59, we reversed judgments which had been obtained by the lenders upon usurious loans of money under color of sales of reversionary interests. In the Gimbernat Case, supra, the defendant, while asserting that the assignments were void for usury, offered to allow them to the extent of the money he received, with interest and necessary disbursements. This offer was refused. We said:

"It seems to us that it is quite impossible to find that these transactions were other than covers for usurious loans. * * * The devices and methods by which it was sought to cover up the real nature of the transactions have been used many times before, and have seldom, if ever, successfully passed the scrutiny of the courts."

In Leavitt v. Enos, 155 App. Div. 584, 140 N. Y. Supp. 862, plaintiff also recovered. Mr. Justice Scott said:

"The transaction between plaintiff and Enos was very similar to the one which we have recently had occasion to consider in Hall v. Eagle Insurance Co., 151 App. Div. 815, 136 N. Y. Supp. 774, except that the present case is, if anything, a little balder and less complicated than the Hall Case. * * * It is perfectly clear that the transaction was a loan of money, and that the pretended assignment was a mere cloak for usury. It is unnecessary to repeat here the reasons for such a conclusion, which were stated at length in the Hall Case. Upon the undisputed facts the complaint should have been dis-

missed, upon the ground that whatever money was advanced by plaintiff was so advanced upon a corrupt and usurious agreement which was unenforceable at law. The defendant, however, both upon his brief and in open court, expresses his willingness and desire that the plaintiff shall be repaid the amount actually advanced to his testator, and to that end offers to consent to a judgment for $5,500. Upon this concession alone we refrain from reversing the judgment and dismissing the complaint."

There is no such offer here. Plaintiff stands on his rights under the usury statutes.

I think the judgment appealed from should be affirmed, with costs and disbursements to the respondent. All concur.