(173 App. Div. 583)

### BROWN v. ROBINSON et al.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. JUDGMENT ⊂⊃720—RES JUDICATA.

In proceedings to test the validity of various assignments of the interest of an heir in his mother's estate, the failure of the assignee to appeal from a decree finding such assignments to be merely equitable mortgages as security for loans estops the assignee from asserting that such assignments were absolute sales.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1251; Dec. Dig. ⊂⊃720.]

2. USURY ⊂⊃18—ASSIGNMENTS PURPORTING TO BE SALES—VALIDITY.

Where the heir of an estate by assignments purporting to be absolute parted with his interest in such estate to the extent of $181,650, for which the purported consideration was $100,000, the assignee being further secured by an insurance policy on the life of assignor for $181,650, held, that the pretended assignments were merely devices for the concealment of a usurious loan, and as such could not be considered as equitable mortgages on the interest of the assignor, but were void under General Business Law (Consol. Laws, c. 20; Laws 1909, c. 25) §§ 370, 371, 373.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 31–34, 36–38, 40; Dec. Dig. ⊂⊃18.]

McLaughlin, J., dissenting.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Judgment on Report of Referee.

Action for accounting by Lawrence E. Brown, substituted testamentary trustee, against Charles A. Robinson and others. From the judgment of the Supreme Court upon the report of a referee, certain defendants appeal. Modified and affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, DOWLING, SMITH, and PAGE, JJ.

Waldo & Ball, of New York City, for appellants.

Rollins & Rollins, of New York City, for respondent Robinson.

Sullivan & Cromwell, of New York City (Alton B. Parker, of New York City, of counsel), for respondent Eagle Ins. Co.

Adrian T. Kiernan, of New York City (John R. Halsey, of New York City, of counsel, and Robert Gray, of New York City, on the brief), for respondent Title Guaranty & Surety Co.

Leonidas Dennis, of New York City, for respondent United States Fidelity & Guaranty Co.

Thomas F. Gilroy, Jr., of New York City (Thomas A. Byrne, of New York City, of counsel), for respondent Empire Trust Co. as trustee.

O'Brien, Boardman & Platt, of New York City (Louis C. Haggerty, of New York City, of counsel), for American Bonding Co.

CLARKE, P. J. This is an action brought by the plaintiff, as substituted testamentary trustee under the will of Agnes Hyatt Robinson, deceased; which on the 11th day of April, 1902, was duly admitted to probate by the Surrogate's Court of the county of New York. There is but one matter which we think necessary to consider on this appeal, the transactions between Robinson and the Eagle Insurance Company. The complaint alleges that the testatrix died possessed of certain personal property to the value of over $200,000, and seised and possessed of certain real property; that under the provisions of the will the testamentary trustees became seised of said real estate, and entitled to receive and hold as trustees the personal property of said estate remaining after the payment of the debts, pecuniary legacies, and expenses of administration, in trust, however, for the uses and purposes and upon the trusts in said will contained; that the defendant George Hyatt Robinson, the son of the decedent, by certain instruments recorded in the office of the clerk for the Surrogate's Court, purported to sell and assign to the defendant Eagle Insurance Company of London, England, his interest in the said trust estate in certain specified amounts; that the plaintiff is informed and believes that the said George Hyatt Robinson questions the validity of said assignments, and that the plaintiff was unable to determine the validity of the said assignments, or any of them, or the rights of the parties thereunder, and demands judgment that the plaintiff and the defendant Charles A. Robinson, as trustees, be permitted to file their accounts, and that said accounts may be judicially settled, and that this court shall determine and adjudge as to the validity of the various assignments made by the said George Hyatt Robinson, and also the interests of the various parties to this action.

The answer of George Hyatt Robinson alleges that on or about the 11th day of November, 1907, the defendant Eagle Insurance Company of London, England, loaned to this defendant certain sums of money, not exceeding in all $90,000, and as security for said loans demanded and exacted four certain instruments, which purported to assign and transfer all the right, title, and interest in and to the legacies and bequests in remainder made to him by the will of his mother as aforesaid, to the extent in all of $181,650, with interest as thereinafter mentioned and set forth; that said purported assignments and transfers were further secured by a mortgage dated November 11, 1907, executed by the defendants George Hyatt Robinson and Marion Hall Robinson, his wife, to the Eagle Insurance Company, and covering and purporting to mortgage the undivided seven-eighteenths interest of said residuary estate of said Agnes Hyatt Robinson in said specified real estate, and that as further security for the payment of said loan said Eagle Insurance Company required and exacted that this defendant's life be and was insured for the benefit of said company, and the said policy of insurance on this defendant's life was made payable to said company; that in consideration of said loans and at the time of the making thereof the Eagle Insurance Company illegally demanded, exacted, took, and received from this defendant and his wife their said contracts and agreements, which, although in form purporting and pretending to be a sale of an interest in the residuary estate of his mother, were in fact a mere cloak and cover for usury, and that said pretended sale was in truth and fact intended to be and was security for a loan not exceeding $90,000, by which it was demanded and exacted by said company that this defendant should pay in and by said pretended assignments and transfers and mortgage, in satisfaction of said loan of not exceeding $90,000, the extortionate sum of $181,650, out of his inheritance, with interest at 6 per cent. per annum on $96,-250 from the date when he becomes 25 years of age, and on $85,400 thereof from the date when he becomes 25 years of age, should his father Charles A. Robinson die before the last-mentioned date, which will be and is at a rate of interest much greater than 6 per cent. per annum, and that said pretended sale was and is a usurious and extortionate and unconscionable loan and contract, and that said pretended assignments and transfers and said mortgage are usurious, unconscionable, fraudulent, and void contracts; that by reason of the premises said company acquired no interest in said legacies and bequests under said will, or in the funds and property held by the plaintiff and the defendant Charles A. Robinson, as aforesaid, or any part thereof. It further alleges that he elects to avoid said transfer and assignments to the Eagle Insurance Company on the ground that they are usurious, fraudulent, and unconscionable contracts, and demands judgment that the said assignments, transfers, and mortgage be declared void and of no effect, and that the company be directed to deliver up the same, and that the same be canceled.

The answer of the Eagle Insurance Company alleges that the assignments to it were and are good, valid, and subsisting assignments of the remainders after the termination of the various trusts to the

extent of said assignments, and demands judgment that this court should determine and adjudge said assignments. to it to be valid and absolute assignments, and that it is entitled to vested prior interests in the remainders at the termination of the various trusts to the extent of said assignments.

The learned referee has found that the various instruments made by George Hyatt Robinson and his wife to the Eagle Insurance Company were assignments by way of security for the repayment to said company, with interest, of the sum of $100,000 paid by said company to said Robinson on November 11, 1907, and constitute an equitable mortgage of his interest in remainder on said date, and that the company is entitled, out of the remainder to which he became entitled to possession on attaining the age of 25 years, to $70,000, with interest at 6 per cent. from November 11, 1907, and $2,727.20, with interest at 6 per cent. from said date, and that the company will be entitled upon the death of Charles A. Robinson to recover out of the remainder which will then be payable to George Hyatt Robinson $30,000, with 6 per cent. interest from November 11, 1907, and $2,062.56, with 6 per cent. interest from said date, and the further sum of $102.33 for each succeeding year until the death of Charles A. Robinson, with interest thereon.

In short, the Eagle Insurance Company claimed that the assignments were good, valid, and absolute, and that it was entitled to vested prior interests in the remainders at the termination of the several trusts to the extent of said assignments. Robinson claimed that the assignments were usurious and void, and that company is entitled to receive nothing thereon. The learned referee held said assignments to be equitable mortgages, valid up to the amounts actually advanced.

On the 27th of March, 1902, Agnes Hyatt Robinson died in the borough of Manhattan, city and state of New York, leaving her surviving the defendant Charles A. Robinson, her husband, and the defendant George Hyatt Robinson, her only child and sole heir at law and next of kin, and leaving a last will and a codicil thereto. Under the provisions of said will the testamentary trustees became seised and possessed of all her real and personal property, upon trusts to divide her residuary estate into two equal parts or shares, and to have, hold, or possess one of said parts during the life of her husband, until her son George should attain the age of 25 years, the income to be paid to her husband during his life, and upon his death, and her son having reached the age of 25 years, to transfer and pay over to said son the said share, and upon the further trust to have, hold, and possess the other one equal part of her share of her residuary estate, and to pay over the income thereof to her son George until he should attain the age of 25 years, and upon his attaining said age to transfer and pay over to him the said share. The son George Hyatt Robinson was born March 2, 1886, and became 21 years of age on the 2d day of March, 1907, and 25 years of age on the 2d day of March, 1911. His father, Charles A. Robinson, was of the age of 62 years on the 11th day of November, 1907.

In the summer of 1907 George Hyatt Robinson, being in need of money, entered upon a series of transactions entirely similar to those considered in Hall v. Eagle Insurance Co., 151 App. Div. 815, 136 N. Y. Supp. 774, affirmed 211 N. Y. 507, 105 N. E. 1085; and Hartley v. Eagle Insurance Co., 167 App. Div. 230, 152 N. Y. Supp. 686. The same persons appear as actors in all these cases. He applied to the same William B. Wolffe, who referred him to the same William A. Jenner, of Jenner & Co., with whom he entered into a similar agreement as found in these cases, and was brought in touch with the Eagle Insurance Company, to whom in the presence of the same Mr. Shope he executed the instruments under consideration, dated the 11th day of November, 1907: First, an indenture executed by himself and his wife, in consideration of certain valuable considerations and the sum of $100, wherein he granted, bargained, sold, assigned, conveyed, and set over to the Eagle Insurance Company, out of the property, interest, devise, legacy, or distributive share to which he was or may be entitled in the equal one-half part of his mother's residuary estate upon the termination of the prior estate limited in said will to the trustees until he attains the age of 25 years the net or clear sum of $66,250, with interest thereon at the rate of 6 per cent. per annum from the date when he attains the age of 25 years, making it his attorney to ask, demand, sue for, collect, and receive said amount, and covenanting that the said equal one-half share consists of real and personal property and has a market value of at least $140,000 over and above all incumbrances. The second was a similar indenture, conveying out of the same share the net or clear sum of $30,000. The third was an indenture conveying out of the property, interest, devise, legacy, or distributive share to which he should be entitled in the equal one-half part of said residuary estate, upon the termination of the prior estate limited in said will to the trustees during the life of Charles A. Robinson, the net or clear sum of $45,400, with interest on said sum at the rate of 6 per cent. per annum from the date of the death of said Charles A. Robinson. The fourth was an indenture by which he conveyed the net or clear sum of $40,000 out of the same share. The fifth was a mortgage upon the undivided seven-eighteenths part of the real estate belonging to his mother's estate in the hands of the trustees, to secure the $30,000 and $40,000 conveyed. His life was also insured for the benefit of the Eagle Insurance Company against his death before reaching the age of 25 years to the amount of $181,650, and the policy was made payable to it.

For these instruments Sullivan & Cromwell, the attorneys for the Eagle Insurance Company, drew their checks as follows: Fifty thousand dollars to the Real Estate Title Insurance & Trust Company of Philadelphia, from which Robinson had previously borrowed $24,650, upon giving bonds to said company in the amount of $50,000; a check for $2,500, to the order of Robinson, which he indorsed over to Sullivan & Cromwell; a check for $10,000, to the order of Robinson, which he indorsed over to Shope, the attorney for Jenner & Co.; three checks, respectively, for $7,500, $12,650, and $17,350, to the order of Robinson, of which it is claimed he paid $12,500 to Jenner & Co,

So that of the total of $100,000, for which the Eagle Insurance Company claims he sold his interest in his mother's estate of $181,650, he actually received for his own use $25,000. But, giving the insurance company the full benefit of the payment of $100,000 as above set forth, we will examine its claim of payment of full consideration, upon which they claim to have purchased $181,650 of interest in this residuary estate for $100,000.

The two first indentures purport to sell, respectively, out of the distributive share of Robinson in the one-half part of his mother's residuary estate, upon the termination of the prior estate limited to the trustees until Robinson attains the age of 25 years, the net or clear sum of $66,250 and $30,000, together $96,250, with interest on said sums at 6 per cent. per annum from the date when Robinson shall attain the age of 25 years. For these two indentures the company paid $70,000, and gave testimony tending to show that said $70,000 on November 11, 1907, was the true value of $96,250 out of said remainder computed at 6 per cent. upon the Carlisle Tables, less 5 per cent. deducted to cover future expenses in respect to said remainder and the collection thereof and the cost of insurance. The appellant gave evidence, which was undisputed, that the value on said day was $75,674.64, using the same method as the company's expert, making the same allowance for costs of insurance, but eliminating the 5 per cent. to cover future expenses, for which there was no warrant.

The third indenture purports to sell the net or clear sum of $45,400 of Robinson's interest in the one-half part of the residuary estate limited upon the life of Charles A. Robinson, with interest thereon at 6 per cent. from the date of his death. For this the company paid $17,350, giving testimony that said amount was the true value at said date. The undisputed evidence of the appellant, using the same method, but eliminating the 5 per cent., was that the value was $17,-899.85. The fourth indenture was for $40,000 on the share limited upon the life of Charles A. Robinson, with the right to appellant to repurchase said sum of $40,000 at any time within six months after arriving at the age of 25 years, providing Charles A. Robinson shall still be living, upon the payment of $20,240, with interest at 6 per cent. from March 21, 1911, to date of payment. For this the company paid $12,650, giving testimony that said sum was the true value calculated as before on $40,000, with the allowance for repurchase.

Appellant's testimony, using the same method and eliminating the 5 per cent., was that the value was $15,770—the result being that, assuming that Robinson received the full $100,000, and that the company was not responsible for the payment of $2,500 to its attorneys, of $10,000 to Shope, the attorney for Jenner & Co., whom Robinson had never seen or heard of until the time of closing, and up to two weeks before the trial had not heard that he had received this $10,000, and the $12,500 brokerage paid to Jenner & Co., it appears that, with its debt entirely secured by assignment, by mortgage, and by life insurance it paid $9,345.29 less than the then value of the estate purchased, calculated by the Carlisle Tables, assuming that it was a purchase.

[1] But the learned referee has held that the transaction was not a

purchase, but a loan, and that the instruments constituted equitable mortgages, and the insurance company was entitled only to what it had actually advanced, with interest. As the company has not appealed, it is estopped from claiming that it was a purchase. That it was not a purchase, but was a loan, and a usurious loan, is established by the following cases:

In Wilmarth v. Heine, 137 App. Div. 526, 121 N. Y. Supp. 677, the action was brought to recover for the alleged conversion of $170 of wages or salary earned by the defendant. The defense was usury. The transaction took the form of an assignment of all wages to a certain amount per month for a period of five years, or until an amount stated should be paid. In reversing a judgment for the plaintiff, the court held that the written instruments, taken in connection with the history of the transaction, showed a device contrived for the purpose of concealing a loan and enabling plaintiff to exact a greater profit than 6 per cent. for the use of his money, and that the substance and effect of the transaction was not a bona fide sale of wages but a borrowing on the one side and a lending on the other at a greater rate of interest than that allowed by law.

In Mercantile Trust Co. v. Gimbernat, 134 App. Div. 410, 119 N. Y. Supp. 103, the father of the defendant had by his will created a trust fund for his son's benefit with the provision that the principal should be paid over to him at certain ages, one-fourth being payable when he should arrive at the age of 25. Soon after he became of age, the younger Gimbernat, being desirous of raising money, applied to the respondent Black for a loan of $3,000, and after some negotiations Black agreed to make the loan, and took from Gimbernat as security therefor an assignment of all of the assignor's right, title, and interest in the aforesaid fund to the extent of $3,000, with interest until paid, to be paid from the legacy which would become due on December 2, 1904. The document also directed plaintiff, as trustee, to pay the said principal sum when payable, and to pay the interest and the annual life insurance premiums upon a policy on Gimbernat's life out of the income payable to Gimbernat under his father's will. This paper named as assignee one Bell, through whom Black claimed by assignment. Out of this sum of $3,000 Gimbernat received only $2,073.50. Thereafter Gimbernat applied for a further loan of $5,000. Black refused to advance the money in the form of a loan, but offered to purchase an interest in the legacy to the extent of $5,000, and the transaction took this form. Gimbernat received $2,984, being charged about $1,200 for the advance. An insurance policy was also taken out. Gimbernat received only $6,057.50 for the assignment of a $10,000 interest in the legacy. Subsequently Gimbernat, through his attorney, while asserting that the assignments were void for usury, offered to allow them to the extent of the money he received, with interest and necessary disbursements. This offer was refused. This court, in reversing a judgment for the plaintiff, held that these transactions were covers for usurious loans. Upon the second trial, a judgment was rendered decreeing that the said assignments to Bell were usurious and void, and directing the city chamberlain to pay over to the defend-

ant Gimbernat the sum which had been paid by the trustees into the hands of the city chamberlain. This was affirmed. 143 App. Div. 305, 128 N. Y. Supp. 751.

In Wetzlar v. Wood, 143 App. Div. 311, 128 N. Y. Supp. 501, there were assignments of interests in estates which the plaintiff claimed were cloaks for usurious loans, and which defendants asserted were purchases pro tanto of the plaintiff's interest in said estates. This court, Mr. Justice Miller writing, reversed a judgment for defendants. On the new trial, which was ordered, judgment for the plaintiff was affirmed on this opinion 154 App. Div. 890, 138 N. Y. Supp. 1148, and this was affirmed 214 N. Y. 639, 108 N. E. 1111.

In Otten v. Freund, 150 App. Div. 434, 135 N. Y. Supp. 59, plaintiff, who had legacy in his father's estate, entered into a written agreement by which he assigned to Freund an interest in said estate to the extent of $5,000, for which he received $2,000, and out of that amount he paid a commission of $200, leaving the net amount advanced to him of $1,800. He also insured his life for the benefit of Freund, and paid the premium for the entire term of said life insurance. The action was to have the agreement declared null and void, and canceled and discharged of record. In this case William B. Wolffe appeared as the intermediary, who also took him to the insurance office to be examined; as in the case at bar. Plaintiff also executed the customary affidavit:

"I make this deposition as an inducement to Arthur Freund to purchase from me the right to receive the first $5,000 payable to me under this last will and testament, and I know that he relies upon the truth of these statements as an inducement for paying the consideration for such transfer."

This court said:

"He claims that the transaction was a purchase, and that as there was no loan there could be no usury. There is no essential difference between this transaction and those considered by this court in Mercantile Trust Co. v. Gimbernat, 134 App. Div. 410 [119 N. Y. Supp. 103], and Wetzlar v. Wood, 143 App. Div. 311 [128 N. Y. Supp. 501]. This young man of 23 got a loan of $2,000, for which he agreed to pay $5,000, and took out and assigned a policy of life insurance, upon which he paid the premium as security. The papers were obviously prepared to avoid the statute. See 1 R. S. 771, § 1 (as amended by Laws 1879, c. 538); Id. 772, § 2, and section 5, as amended by Laws 1837, c. 430, now General Business Law (Consol. Laws, c. 20; Laws of 1909, c. 25) §§ 370, 371, 373. Mr. Justice Miller in the Wetzlar Case said: 'The fact that a policy of life insurance was procured at the expense of the plaintiff and assigned to the finance company, together with the fact that the assignments covered the plaintiff's interest in his grandmother's estate, strongly tends to prove that a loan, not a sale of a specified share of his interest in his father's estate, was intended.' Said Mr. Justice Scott in the Mercantile Trust Co. Case: 'It seems to us that it is quite impossible to find that these transactions were other than covers for usurious loans. * * * The devices and methods by which it was sought to cover up the real nature of the transactions have been used many times before, and have seldom, if ever, successfully passed the scrutiny of the courts. They have not even the merit of novelty or plausibility."

Hall v. Eagle Insurance Co., 151 App. Div. 815, 136 N. Y. Supp. 774, affirmed 211 N. Y. 507, 105 N. E. 1085, was decided shortly before the decision in the case at bar. The transactions were similar, and the insurance company made the same claim that it did in its answer in this case—that there was a bona fide and out-and-out pur-

chase of an interest in the remainder. Mr. Presiding Justice Ingraham rejected that claim, and demonstrated that it was a usurious loan, but, because of the offers of the plaintiff and the form of the pleadings, concluded that the assignments should be treated as equitable mortgages, and allowed the defendant the actual amount advanced, with interest. The learned referee in the case at bar, not appreciating the differences between the two records, and not having the benefit of the cases I am about to cite, succeeding and explaining the Hall Case, followed, and, as I think, erroneously applied to this case, its conclusion, and improperly treated the instruments here under consideration as equitable mortgages. The Hall Case is direct authority for the proposition that the real nature of the transaction attempted to be concealed by the forms and the instruments used in that and in this case was a loan of money, and not a sale of an interest amounting to a clearly defined sum of money in the reversionary estate of the plaintiff, and that the contract was usurious.

In Leavitt v. Enos, 155 App. Div. 584, 140 N. Y. Supp. 862, Mr. Justice Scott said:

"The transaction between plaintiff and Enos was very similar to the one which we have recently had occasion to consider in Hall v. Eagle Ins. Co., 151 App. Div. 815 [136 N. Y. Supp. 774], except that the present case is, if anything, a little balder and less complicated than the Hall Case. The assignment now under consideration purports to sell, assign, transfer, and set over to plaintiff * * * any and all claims which Enos then had in and to the estate of Thomas W. Evans, deceased, to the amount of $7,500. Reference is made to the agreement by the executors of said Evans to pay Enos the sum of $50,000. It is further provided that, if the said sum of $7,500 be not paid out of the agreed sum of $50,000, then that it shall be charged against any other sum due to Enos out of the Evans estate, and finally Enos warranted and guaranteed the repayment to said plaintiff of the said sum of $7,500. All that Enos received was $5,500, the difference between that sum and $7,500 being divided between plaintiff, her brothers and agents, and their attorney. It is perfectly clear that the transaction was a loan of money, and that the pretended assignment was a mere cloak for usury. It is unnecessary to repeat here the reasons for such a conclusion, which were stated at length in the Hall Case. Upon the undisputed facts the complaint should have been dismissed, upon the ground that whatever money was advanced by plaintiff was so advanced upon a corrupt and usurious agreement, which is unenforceable at law. The defendant, however, both upon his brief and in open court, expresses his willingness and desire that the plaintiff shall be repaid the amount actually advanced to his testator, and to that end offers to consent to a judgment for $5,500. Upon this concession alone we refrain from reversing the judgment and dismissing the complaint."

In Hartley v. Eagle Insurance Co., 167 App. Div. 230, 152 N. Y. Supp. 686, the transaction was entirely similar to that in Hall v. Eagle Insurance Co., and the negotiations and transactions were carried on with Jenner & Co. and with Shope, who also figured in that case. The writer of this opinion said:

"The defendant, appealing from the judgment, makes no attempt to justify the transaction, but claims that the transaction in this case and the documents executed were exactly the same as in Hall v. Eagle Insurance Co., 151 App. Div. 815 [136 N. Y. Supp. 774], affirmed 211 N. Y. 507 [105 N. E. 1085]. 'In every particular the cases are identical, so far as what was done and intended by the parties is concerned, and, this being so, the decision in the former case is conclusive of this.' And therefore it claims that

the judgment should have declared the instrument an equitable mortgage, and have provided for the surrender and cancellation thereof upon the payment by the plaintiff of the original sum received by him and simple interest to the date of judgment. In the Hall Case, supra, the court held that there could be no question but that the transaction was essentially a loan of money. After citing the usury statutes and various authorities the court said: 'We have here the advance of a sum of money by the defendant to the plaintiff, and an arrangement by which the defendant was absolutely assured the repayment of the money advanced out of the plaintiff's property, which was ample security for its repayment. * * * Treating this transaction, therefore, as a loan or advance of the money, to be repaid to the defendant, the question presented is whether it did provide or intended to provide for the payment of a greater sum or greater value for the loan or forbearance of any money above 6 per cent. per annum. * * * The plaintiff's mother had an expectation of life of about 13 years, and, if she lived out that period, the amount received by the defendant would be largely in excess of the interest allowed by statute. There was, of course. the possible contingency that she would live longer than the expectation of life; but it was early determined by the courts of England that such a possibility would not take the case out of the statute prohibiting usury. * * * If, therefore, this arrangement between the parties is to be construed as an absolute obligation on the part of the plaintiff that the sum of $19,000 should be repaid to the defendant as interest for the advance of the sum of $15,500, I think it clear that the contract would be within the statute, and the whole transaction and the instruments delivered under it void.' Applying that reasoning to this case it is clear that the judgment appealed from was right. In the Hall Case the instruments were not declared null and void, for the reason that the complaint therein alleged that the indentures and instruments were executed and delivered by the plaintiff to the defendant, to be held by it only as security for the purpose of securing payment to the defendant of the said sum of $15,500, with interest thereon at the date of payment, and that it was understood and agreed by the parties that said indentures and instruments were made and delivered only as such security, and that the plaintiff had duly tendered to the defendant the sum, with interest at 6 per cent. from the time it had been received; but the said defendant declined said offer, and plaintiff demanded judgment in the alternative, either that the judgment declare that the loan was made as result of a usurious and void contract, or that the said instruments may be declared and adjudged to have been and to be a mortgage given as collateral security for the payment of $15,500, with legal interest, and that the defendant be directed to accept said sum of money, and that the instruments be canceled. But no such case is presented here. The complaint proceeds flat-footed upon the ground of a corrupt and usurious contract, and the judgment demanded is appropriate to such allegations. The findings of the court support the complaint, and the judgment follows as a matter of law. In Mercantile Trust Co. v. Gimbernat, 134 App. Div. 410 [119 N. Y. Supp. 103], Wetzlar v. Wood, 143 App. Div. 311 [128 N. Y. Supp. 501], and Otten v. Freund, 150 App. Div. 434 [135 N. Y. Supp. 59], we reversed judgments which had been obtained by the lenders upon usurious loans of money under color of sales of reversionary interests."

We therefore unanimously affirmed the judgment, which declared the instruments void for usury and directed that they be delivered up and canceled; Presiding Justice Ingraham, who had written the opinion in the Hall Case, concurring.

[2] Upon the foregoing authorities, which are controlling upon this court, so much of the judgment appealed from as holds the instruments executed and delivered to the Eagle Insurance Company to be equitable mortgages, and allowing it to recover the actual amount advanced, with interest, should be reversed, and said instruments declared usurious, null, and void, and directed to be delivered up and

canceled, and that said company has no valid and enforceable claim by reason thereof, or growing out of the transaction evidenced by them. Such of the findings in the decision as conflict with this conclusion are reversed. New findings will have to be made, which will be settled on notice. The judgment, modified as indicated, should be affirmed, with costs to the plaintiff payable out of the estate, with costs to the defendant George Hyatt Robinson against the respondent Eagle Insurance Company, and with costs to the respondent Empire Trust Company against the defendant George Hyatt Robinson. Settle order on notice.

DOWLING, SMITH, and PAGE, JJ., concur.

McLAUGHLIN, J. (dissenting). I am unable to distinguish this case from Hall v. Eagle Insurance Co., 151 App. Div. 815, 136 N. Y. Supp. 774, affirmed without opinion 211 N. Y. 507, 105 N. E. 1085. The pleadings, and the evidence adduced at the trial, including the instruments involved in the transaction, are similar to those in the Hall Case. The court there held that the instruments executed at the time the loan was made were, in effect, a mortgage to secure defendant what it was legally entitled to recover, which was the sum advanced, with legal interest thereon. So I think we should here hold, following the Hall Case, that the instruments delivered to the Eagle Insurance Company are equitable mortgages, and a recovery should be had thereon to the amount of the money actually advanced, with legal interest.

I am therefore unable to concur in the prevailing opinion, in so far as it holds that such instruments are usurious, null, and void. I think the judgment should be affirmed.