HANNAH DIFFENDARFER, Appellant, *v.* GEORGE W. DICKS et al., Respondents.

While mere inadequacy of price, unaccompanied by fraud, is not a ground for rescinding an executed contract, evidence of such inadequacy is competent on the question of fraud.

In an action by a residuary legatee to set aside, on the ground of fraud, an assignment made by an administrator, with the will annexed, of a claim in favor of the estate against another estate, the court excluded evidence offered by plaintiff to show that the debtor estate was solvent, and also evidence as to what the books of the two decedents showed was the amount of the unpaid account, *i. e.*, that it was over $5,000, it having been sold for $273. *Held,* error.

(Argued March 24, 1887; decided April 19, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 9, 1885, which affirmed a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought by plaintiff, as sole residuary legatee under the will of Sarah A. Quinn, to set aside, on the ground of fraud, an assignment executed by an administrator, with the will annexed, to defendant Dicks, of a claim in favor of the testator's estate, against the estate of Thorn Walling, deceased.

The facts, so far as material to the questions discussed, are stated in the opinion.

*J. P. Osborne* for appellant. The residuary legatee is not bound to proceed against the administrator. She may attack the fraudulent assignment and seek to annul it. (*Fellows* v. *Longyer*, 91 N Y 331, 332 ; Perry on Trusts, §§ 836–843;

*Colt* v. *Lasnier*, 9 Cow. 341 ; 1 Roper on Legacies, 438–440 ; *Dobson* v. *Simpson*, 2 Rand. [Va.] 297 ; *Hill* v. *Simpson*, 7 Ves. 152 ; *McLeod* v. *Drummond*, 17 id. 169 ; *Wilson* v. *Moore*, 1 Myl. & K. 337.) The error as to the balance shown by Quinn's book was a mistake of an intrinsic fact. (*Dambmann* v. *Schulting*, 75 N. Y. 55, 63 ; *Butler's App.* 26 Penn. St. 63 ; *Harris* v. *Tyson*, 24 id. 347 ; *Harmon* v. *Hope*, 87 N. Y. 10 ; *Nevins* v. *Dunlap*, 33 id. 680.) As gross inadequacy of consideration, accompanied with papable mistake of fact, appear in the case at bar, the contract should be rescinded. (*Croft* v. *Graham*, 2 De G., 1 J. & S. 155 ; *Hough's Adm'r* v. *Hunt*, 2 Ohio, 506 ; *Kloepping* v. *Stellmacher*, 21 N. J. 328, 329 ; *Wright* v. *Wilson*, 2 Yerg. (Tenn.) 294 ; Kerr on Fraud and Mistake, 189, 396 ; Story's Eq. Jur., §§ 110, 246 ; *Parmelee* v. *Cameron*, 41 N. Y. 396 ; *Dunn* v. *Chambers*, 4 Barb. 376, 379 ; *Wormack* v. *Rogers*, 9 Ga. 60 ; *Picket* v. *Loggan*, 14 Ves. 214 ; *Butler* v. *Haskell*, 4 De Saus 651 ; *Seymour* v. *Delancey*, 6 Johns. Ch. 222 ; *Osgood* v. *Franklin*, 2 id. 1, 23 ; 14 Johns. 527 ; *Leaman* v. *Reggan*, 1 Greene Ch. [N. J.] 214 ; *Howell* v. *Hester*, 3 id. 266 ; *Day* v. *Newman*, 10 Ves. 300 ; *Greer* v. *Tweed*, 13 Abb. Pr. [N. S.] 427.) The fact that the contract was extortionate and unjust raises a presumption of deceit and fraud in its inception. (*James* v. *Morgan*, 1 Lev. 111 ; *Chesterfield* v. *Janssen*, 1 Wills. 386 ; *Floyd* v. *Edwards*, Cowp. 112 ; *Jestons* v. *Brooks*, id. 793 ; *Baxter* v. *Wales*, 12 Mass. 365 ; *Russell* v. *Roberts*, 3 E. D. S. 118 ; *Hough's Adm'r* v. *Hunt*, 2 O. [Hammond] 506 ; *Butler* v. *Duncan*, 41 Am. Rep. 711, 713 ; *Mitchell* v. *Jones*, 50 Mo. 438 ; *Kloepping* v. *Stellmacher*, 21 N. J. Eq. 328, 329 ; *Wright* v. *Wilson*, 2 Yerg. [Tenn.] 294 ; *Gwynne* v. *Heaton*, 1 Bro. C. C. 9 ; *Hearne* v. *Meers*, 1 Vern. 465 ; *Heatheoat* v. *Paignon*, 2 Bro. C C. 161 , Sugden on Vendors, 193, 275, 276 ; *Deaderick* v. *Watkins*, 8 Humph. [Tenn] 520.) Plaintiff's position is analogous to the heirs-at-law of a decedent, who are not estopped by the conduct of the administrator. (Bigelow on Est., 78 ; *Garnet* v. *Macon*, 6 Call, 308 ; *Stone* v. *Wood*, 16 Ill. 177 ; *Alston* v. *Mulford*, 1 Brock. 266.)

It was the administrator's duty to collect the choses in action belonging to the estate, and realize the highest or best price he could get for them.  (3 Redfield on Wills [3d ed.], 173; 3 Williams on Executors [6th Am. ed.], 1754; 2 Kent's Com. 503, 538; 2 Blackst. 506; 1 Perry on Trusts, § 187; *Chesterfield* v. *Janssen*, 2 Ves. 155; *Harvey* v. *Mount*, 8 Beav. 439; *Rosevelt* v. *Foulton*, 2 Cow. 129; *McDonald* v. *Neilson*, 2 id. 139; *Howard* v *Edgell*, 17 Vt. 9; *Osgood* v *Franklin*, 2 Johns. Ch. 1; 14 Johns. 527; *Davidsons* v *Little*, 27 Penn. St. 251, *Petrie* v. *Clark*, 11 S. & R. 388, *Johnston* v. *Johnston*, 2 Hill's Eq. 277; *Field* v. *Scheffelin*, 7 Johns. Ch. 155; *Colt* v. *Lasnier*, 9 Cow. 320; *Sacia* v. *Berthoud*, 17 Barb. 15; *Baker* v. *Bliss*, 39 N. Y. 76; *Shaw* v. *Spencer*, 100 Mass. 382, and note; 1 Story's Eq. Jur., § 188; Kerr on Fraud and Mistake, 186; *Butler* v. *Haskell*, 4 Des. 651; *Judge* v. *Wilkins*, 19 Ala. 765; *Rice* v. *Gordon*, 11 Beav. 265; *Garnet* v. *Macon*, 6 Call. [Va.] 361; 2 Perre Williams, 148–150; *Scott* v. *Tyler*, 2 Bro. C. C. 433, 477, *Andrew* v. *Wrigley*, 4 id. 125–130; *Planter's Bk.* v. *Neeley*, 7 How. 80; 40 Am. Dec. 52, 53.)

*William Stone* and *H. D. Van Orden* for respondents. No more should be required of parties to a sale than to use no falsehood.  (*McFarland* v. *Newman*, 9 Watts, 86; *Hargous* v. *Stone*, 5 N. Y. 73, 89; *Graham* v. *Meyer*, 33 Hun, 489; *In re Att'y-Gen'l* v. *Cont. L. Ins. Co.*, 49 N. Y. 199.) Mere inadequacy of price is no ground for setting aside an executed contract.  (Story's Eq. § 245; *Osgood* v. *Franklin*, 2 Johns. Ch. 1; 14 Johns. 527; *Seymour* v. *Delancy*, 3 Cow. 445; *Udall* v. *Kenny*, id. 590; *North* v. *Case*, 42 N. Y. 362; *Earl* v. *Peck*, 64 id. 596; *Judge* v. *Wilkins*, 19 Ala. 765; *Field* v. *Scheffelin*, 7 Johns. Ch. 150; *Rogers* v. *Squires*, 98 N. Y. 49.)

ANDREWS, J.   We concur with the opinion of Judge DAVIS that evidence was improperly excluded on the trial, bearing upon the question of fraud in the assignment and purchase of the claim in favor of the estate of Quinn, against the estate

of Walling. This conclusion does not conflict with the authorities cited in the prevailing opinion, which establish that mere inadequacy of price, unaccompanied by fraud, is not a ground for rescinding an executed contract, and that a party is not to be deprived of the benefit of a good bargain, merely because the other party may have acted in ignorance of the value of the thing sold, or of some material fact known to the purchaser, where no undue advantage is taken by the latter, and there are no special circumstances calling for disclosure. But the jurisdiction of chancery to rescind contracts for fraud or mutual mistake of material facts, is one of the best settled and most beneficent powers of a court of equity. The case presented by the evidence was that of the assignment by Quinn's administrator to the defendant Dicks, for the consideration of $273, of a claim in favor of that estate against the estate of Walling, amounting to more than $5,000, and which on a reference under the statute, instituted subsequent to the assignment, has been found by the referee to have amounted, on June 8, 1883, to $5,534.30. The assignment to Dicks was made March 10, 1882. If the estate of Walling was solvent, it is the case of an assignment, made by an administrator of a claim in favor of the estate he represented, upon a consideration which was grossly inadequate. The inadequacy of the consideration was one of the facts which the plaintiff was entitled to prove. Whether, standing alone, it would support a finding of fraud is not the question. The trial judge, we think, erroneously excluded evidence offered to show that the estate of Walling was solvent. It was a material fact bearing upon the question of the adequacy of the consideration. So, also, evidence was excluded as to what the books of Quinn & Walling showed was the amount of the account against Walling. This evidence was also, we think, improperly excluded. If it had appeared from the books of both creditor and debtor that there was an admitted balance of $5,000 due to Quinn's estate, it would have been a significant circumstance bearing upon the good faith of the administrators of the respective estates, and also, in view of

the other evidence, of the good faith of the defendant Dicks. The way in which the defendant Dicks came into the transaction is peculiar. Quinn & Walling both died in 1880. In March, 1881, the administrator of Quinn wrote the administrator of Walling that Walling was indebted to Quinn in the sum of $273. In November, 1881, the defendant Dicks sent one Condit to Philadelphia with $300 to buy the claim, but James, the administrator of Quinn, then declined to sell it. In March, 1882, James came from Philadelphia to New York and there had an interview with Apgar, Walling's executor. James informed Apgar that, as near as he could make out, the claim was $273. The executor of Walling did not inform James that the claim was more than $273, or say anything upon the subject of the amount, but said he would pay the claim if James would make a detailed statement of it. James replied that he could not make a detailed statement, but only a statement of what appeared on the books. Apgar replied that this would not do and that he could not pay it. Thereupon James went to one Egbert, a nephew of Dicks and a son of Walling's bookkeeper, "of whom Apgar told him," and the two together went to the place where Dicks was employed as a clerk and found him, and Dicks offered James $273 for the claim, which offer James accepted, and thereupon Dicks took from his desk an assignment already prepared, which James signed, and the $273 was paid. The complaint alleges that, at the time of the assignment, Dicks had knowledge or information of the true amount of the claim. In his answer he denies knowledge only, but does not deny that he was informed of the amount. On the trial he testified that he did not know the amount until after the assignment, but admitted that he had testified on the reference under the statute, that he was informed of the amount in October or November, 1881. If the plaintiff had been permitted to show that Dicks knew or had reason to believe when he took the assignment, that Walling's estate was solvent, would not a case have been presented calling for explanation on his part? He knew that he was dealing with an adminis

trator.   If he knew also the amount of the claim, and that Walling's estate was solvent, must he not have known that the administrator of Quinn in selling a claim of more than $5,000 for $273, was acting either under a mistake, or in reckless disregard of his trust.   If he was acting in collusion either with the administrator of Quinn or of Walling, the transaction was a fraud.  How came he to know that the claim was $273, or how did it happen that he prepared an assignment in advance ? We do not say that this transaction may not have been fair and honest.   But the circumstances are suspicious, and it was a case where the fullest inquiry as to the facts should have been permitted within the rules of evidence.

The judgment should be reversed, and a new trial ordered. All concur.

Judgment reversed.