In the Matter of the Estate of EDWARD BECHTOLDT, Deceased.

Surrogate's Court, Clinton County, June 13, 1936.

*Cotton, Franklin, Wright & Gordon* [*Paul H. Fox* of counsel], for the trustee.

*Jonathan Holdeen,* for the Northchester Corporation, claimant, against Edward Hallet Schneider.

*Victor F. Boire,* for Edna S. Morley.

*Edward Hallet Schneider,* in person and by *Arthur H. Longfellow,* with *Patrick J. Tierney* of counsel.

HARRINGTON, S. In this proceeding the Chemical Bank and Trust Company has rendered its final account as trustee for Edward Hallet Schneider under the trust created for him pursuant to paragraphs eighth and ninth of decedent's will. The details of this trust fund are set forth in a decision of this court construing decedent's will. (See *Matter of Bechtoldt,* 148 Misc. 8.) Briefly, Edward Hallet Schneider was bequeathed two-sixteenths of decedent's residuary estate to be paid to him when forty-three years of age and until then only the annual income thereon. In the event of his decease prior to reaching such age, then the principal of said fund was bequeathed to his next of kin. Mr. Schneider became forty-three years of age on May 10, 1935.

No objections have been filed to the account of the trustee. The only question for determination in this proceeding is the validity of an assignment of part of the principal of this trust fund given by Mr. Schneider to Northchester Corporation, Pine Plains, New York, under a written assignment, dated October 3, 1932, and duly recorded in this office on October 13, 1932. The testimony of Mr. Schneider indicates the following circumstances in connection with the execution and delivery of the assignment: Shortly prior to the date of this assignment, Mr. Schneider made

application for a loan of $2,000, at the office of Joseph Basch Company, brokers, 132 Nassau street, New York city, to Mrs. Rose who was in charge of the office. Later she phoned Mr. Schneider that she had a man who would loan the money. Mr. Schneider went to this office and there met Mr. Holdeen. Mr. Schneider testified that he brought with him to this conference a copy of his uncle's will; that he informed Mr. Holdeen of the previous assignments made by him of his expected interest under the will, which will be hereinafter referred to; that he advised Mr. Holdeen he would like to borrow $2,000, and asked him whether he would accommodate him; Holdeen said he would think it over; Schneider advised Holdeen that he had better insure his (Schneider's) life and that if he did so he (Holdeen) would have to pay for the policy; Holdeen advised Schneider that he looked too healthy to insure. This is the only meeting Schneider had with Holdeen. Later and on October 3, 1932, Schneider returned to this office and saw Mrs. Rose. Mrs. Rose advised that she had arranged a loan for him; he went with her to 15 Park row, presumably at the office of the notary public who took the acknowledgments to the papers thereafter executed, and which office was in the same building in which Mr. Holdeen then had his office. Schneider said he did not know the people he met there other than Mrs. Rose, nor does the testimony reveal the names or number of such persons present at this conference; it appears that two certified checks of the Westchester Corporation were delivered to him and both in form payable to him, one for $2,000 and the other for $100. The papers hereinafter mentioned were handed to him for his signature and he duly executed the same. In answer to the question as to what he (Schneider) said about repaying the loan, Schneider said, " I asked him if by any manner or means before May 1, 1935, I had the money, whether I could repay the loan. They said if you can, come and see us." As above mentioned, the testimony does not reveal the identity of the person or persons who are alleged to have made such statement. It does appear, however, that Mr. Holdeen was not present at this meeting. Subsequent to May 10, 1935, upon which date Schneider became forty-three years of age and thereupon became entitled to the principal of the trust fund above mentioned, he offered Mr. Holdeen $2,500 in settlement of Mr. Holdeen's assignment, which offer was refused. Between the date of the assignment on October 3, 1932, and May 10, 1935, Schneider never made any offer to Mr. Holdeen in reference to the payment of said sum of $2,100 or any interest thereon.

The instruments executed by Schneider on October 3, 1932, were an affidavit of title in the usual form setting forth Mr. Schneider's

interest in the trust fund under his uncle's will, that he had not made any assignment thereof and had received no part thereof; that there were no unpaid judgments against him nor any proceeding in bankruptcy affecting his property. The last paragraph of this affidavit reads as follows: "This affidavit is made for the purpose of inducing the mortgagee named in a mortgage or the grantee in a grant or assignment made about simultaneously with this affidavit to accept such instrument and to advance any amount loaned or paid in connection therewith, knowing that such payment was induced by reliance upon this affidavit and statement, the correctness of which is hereby guaranteed."

The assignment recorded in this office and referred to herein recites as a consideration "certain thousands of dollars" and in form grants, transfers and assigns to said assignee (Northchester Corporation) certain bonds of Atchison, Topeka and Sante Fe Railroad Company, in the principal sum of $5,000, four per cent prior lien bonds due in 1994, being all of the bonds of said railroad included in the assets of said trust fund, together with United States Government First Liberty four and one-quarter per cent bonds of the par value of $400. This assignment reserved to the assignor all income on said securities prior to May 10, 1935. It further provided that in the event said securities were not included as a part of the trust fund on May 10, 1935, then the assignee should have the opportunity of accepting the sale price of such securities when sold, or such portion of the trust estate then existing as the present value of such securities bore to the present value of the trust estate. It also provided that the hazard that the said assignor would never attain the age of forty-three years was assumed by the assignee. In the event said assignor should fail to comply with the terms of the assignment or any contest should arise in the accounting proceedings of the trustee involving the validity of the assignment by reason of any act of the assignor, the assignee was authorized to receive as compensation for the reasonable value of its services necessary to perfect the title of said assignee in such securities a sum not less than five per cent nor more than ten per cent of the amount of the value of the share of said trust estate so assigned. A further instrument was executed by Mr. Schneider on the same date to the said Northchester Corporation in substantially the same form as the assignment above referred to and which was recorded in this office, except the transaction therein described is referred to as a *sale* and the price is stated to be $2,100. Then follows the statement that the transaction mentioned is not as collateral security for the payment of a loan of any amount but is an absolute and unconditional *sale* of all the interest of said Schneider in said bonds

or substitutes by the terms of said will, when he attains the age of forty-three years, and that the assignment is not subject to redemption or rescission.

The testimony of Mr. Holdeen reveals the fact that while the stock of the Westchester Mortgage Company and the Northchester Corporation is not registered in his name, he is the real owner thereof; that the business of said corporations at the time of this transaction was the purchase and sale of real estate and interests in decedents' estates; that Mrs. Rose had charge of the business of Joseph Basch Company; that prior and subsequent to 1932, he had bought through that office interests in decedents' estates several times; that the notary who took the acknowledgment of the assignment in question had his office in the same building and on the same floor as his office and had taken various acknowledgments for him over a period of two or three years prior to that time. On direct examination, he said he could not recall having met Mr. Schneider, but after Mr. Schneider's testimony he testified that he did recall having met him but that he (Holdeen) said nothing to indicate that the transaction in question was a loan. Holdeen personally drafted the various papers herein mentioned. His recollection as to how the papers were delivered to the person who supervised the execution thereof is very hazy. When asked whether there was anybody at 15 Park row on October 3, 1932, to represent him on the closing of this transaction, he replied that either Stephen Ball or Edward Wren from his office might have been there; that they were authorized to close the transaction for him and that he believed he delivered the papers to one of them for such purpose. He also testified that before preparing these papers he had investigated the interest of Mr. Schneider in the trust fund herein mentioned and among other things had ascertained that there were two prior assignments recorded in this office, one to the National Iron Bank of Pottstown, Pa., for $15,000 and another to Fidelity and Deposit Company of Maryland for $10,000. Both of these have subsequently been paid in full. When asked why this particular transaction was handled through the Northchester Corporation instead of himself he replied, " I think that it was that I was reluctant to permanently put my name on the record as the assignee. If the matter came into court it meant that I then appeared of record as attorney for myself often times and I didn't think — I just didn't like that combination."

We thus have a transaction where an alleged borrower makes an application to a broker's office for a loan; an interview is had with the proposed lender; the alleged borrower asks whether the proposed loan can be made; the alleged lender advises he will consider the

matter; no other conference is had between the parties; the alleged lender testifies that he said nothing at this conference to indicate that the transaction was to be a loan; while the money in form is advanced by a corporation, we may treat this as immaterial since the alleged lender admits that for all purposes the two corporations involved are owned by himself; the alleged lender, an attorney, drafts the papers hereinabove mentioned and in form they purport to be an absolute sale and assignment of specific securities therein described for the consideration therein mentioned, but the assignment is subject to the hazard that the alleged borrower may never become vested with said securities by reason of the provisions of the trust fund in which they are included; when the matter is closed someone is present representing the alleged lender, and upon execution of the instruments hereinabove mentioned he delivers to such borrower two checks; the check for $100 is thereupon indorsed by the alleged borrower and delivered to Joseph Basch Company, brokers, for its services in the matter and the other for $2,000 is retained by the alleged borrower for his use and benefit; the alleged borrower asks the person representing the alleged lender whether he could repay the loan prior to May 1, 1935, if he secured the money and receives the reply, " If you can, come and see us;" there is no testimony that anything was said about the interest rate; from the date of this assignment, October 3, 1932, to May 10, 1935, the alleged borrower never makes any offer to pay interest on the sum received or any part of the principal thereof. The alleged borrower now questions the validity of this assignment upon the ground that it is a usurious agreement; that it was obtained by fraud and duress and was and is an unconscionable, unequitable agreement and unenforcible at law or in equity.

The question to be determined is whether the transaction in question was a loan or sale. This can only be determined by ascertaining the intent of the parties as to the nature of the transaction, either from the testimony or, in case of conflict thereof, from the nature of the transaction itself. (*Hartley* v. *Eagle Insurance Co.*, 222 N. Y. 178.) The only testimony offered was that of the two interested parties. That testimony is not sufficient, in my opinion, to indicate an intent on the part of the alleged lender that the transaction was in fact a loan. Nor, having in mind the business experience of the alleged borrower and particularly his previous experience with actual loans for which he made previous assignments of his interest in this same trust fund, can I find that the transaction was intended by him as a loan. With a grammar school education he entered Wall Street in 1908 and remained there for two years. After being in other businesses throughout the

country for several years, he was in the United States army during the World war, returned to Wall Street in 1919 and remained there until 1922. Since 1923 he has been in the printing business in New York city. In 1927 he secured a loan of $15,000 from National Iron Bank of Pottstown, Pa., through Joseph Basch Company, 132 Nassau street, New York city. He paid Basch & Co. $100 for its services. This loan was obtained by the issuance and sale of bonds secured by an assignment of his interest in this estate to that extent, which bonds were guaranteed by the Fidelity and Deposit Company of Maryland. At that time he paid said latter company $750 for its services. He executed a second assignment of $10,000 against his interest in this estate to secure said bonding company for the bonds so issued by it. These loans were secured by paid up life insurance policies payable to said bank for $15,450. He paid $1,500 to a broker for the sale of the bonds in the sum of $15,000, as above mentioned. These loans specified the interest payable and the same with interest have been paid in full. These matters indicate that Mr. Schneider must be adjudged to have been a competent business man at the date of the incident now before this court and one who had had sufficient experience in business matters, and especially those pertaining to loans secured by an assignment of his interest in this estate, to have understood the nature of the transaction in question.

The intent to take usurious interest requires such intent on the part of the borrower as well as upon the part of the lender. (*Brown* v. *Robinson*, 224 N. Y. 301, 318; *Salvin* v. *Myles Realty Co.*, 227 id. 51, 57, citing *Hartley* v. *Eagle Insurance Co.*, *supra; White* v. *Benjamin*, 138 N. Y. 623.) It is the essence of a usurious transaction that there shall be an unlawful and corrupt intent on the part of the lender to take illegal interest and such intent must be found before the transaction can be deemed usurious. (*Rosenstein* v. *Fox*, 150 N. Y. 354, 363.) The presumption is against the taking of usury which must be established by clear evidence as to all the elements essential thereto. (*Grannis* v. *Stevens*, 216 N. Y. 583, 591, citing *Rosenstein* v. *Fox*, *supra.*) The form of the transaction is not controlling, and in many cases where the transactions have been in the form of sales the courts have held that they were in fact loans and void because usurious.

In *Mercantile Trust Co.* v. *Gimbernat* (134 App. Div. 410) there were three assignments made by the alleged borrower of his contingent interest in an estate; the first provided that the amount so assigned was to bear interest until paid and the other two were in form outright sales of such contingent interests. Various deductions were made for alleged expenses in connection with the transac-

tion, including the life insurance premium on a policy taken out on the alleged borrower's life. The transactions were held to be loans and void because usurious. As indicative of the fact that these transactions were loans, the court pointed to the fact that in three releases from these assignments, the same were referred to as having been given " as security " for the payment of the amounts therein mentioned. It should also be noted that no hazard was assumed by the alleged lender as this was covered by a life insurance policy on the life of the alleged borrower.

In *Wetzlar* v. *Wood* (143 App. Div. 311) a contingent interest in the alleged borrower's father's estate plus a vested interest in his grandmother's estate were assigned to the alleged lender for the sums advanced upon such assignments. A life insurance policy upon the life of and at the expense of the alleged borrower was secured for the benefit of the alleged lender. The transaction was held to be usurious. It should be noted, however, that in that case the alleged lender took no hazard with respect to the amount advanced the assignee by reason of the assignment of a vested interest for part of the sum advanced and the fact that the alleged borrower's life was insured for the benefit of the assignee.

In *Otten* v. *Freund* (150 App. Div. 434) an assignment was made of a contingent interest in an estate. The form of the assignment was that of a sale. A life insurance policy was taken out in favor of the alleged lender on the life and at the expense of the alleged borrower. The transaction was held to be usurious. The court commented upon the decision of *Wetzlar* v. *Wood* (*supra*), in which the court said: " The fact that a policy of life insurance was procured at the expense of the plaintiff and assigned to the finance company, together with the fact that the assignments covered the plaintiff's interest in his grandmother's estate, strongly tends to prove that a loan, not a sale of a specified share of his interest in his father's estate, was intended."

In *Hall* v. *Eagle Insurance Co.* (151 App. Div. 815; affd., without opinion, 211 N. Y. 507) an assignment was made of a vested interest in an estate for the sum advanced to the alleged borrower. The assignment was in form a sale. In addition the assignor and his wife gave a mortgage without a bond to the assignee on property owned by them together with a surety company bond as further security for the sum due the assignee under the terms of the assignment. At pages 826 to 829 the court laid stress on the fact that no risk was assumed in the transaction by the assignee. The trial court held that the transaction constituted a sale and dismissed the complaint. The complaint demanded judgment in the alternative that the assignment be deemed to be a usurious loan and void

under the statute, or that the same be decreed to be a mortgage and the defendant be directed to receive and accept the sum advanced thereon with legal interest. The Appellate Division reversed the trial court and directed an entry of judgment for the sum advanced plus interest, treating the transfer as security for the sum advanced. This judgment was affirmed by the Court of Appeals.

In *Leavitt* v. *Enos* (155 App. Div. 584) the transaction involved an assignment of a vested interest of the assignor in an estate. The assignment further provided that the sum therein mentioned should be paid as agreed upon, and the assignor warranted and guaranteed the repayment thereof to the assignee. The court held that the complaint should have been dismissed by the lower court on the ground that the transaction was a loan and void because usurious. However, as the defendant in open court expressed his willingness to repay the plaintiff the sum advanced by the latter under the assignment, the court reversed the judgment for the plaintiff and directed the dismissal of the complaint unless the plaintiff should stipulate that the judgment be reduced to the amount of the sum advanced under the terms of the assignment, in which case the judgment as so reduced should be affirmed.

It, therefore, should be noted that in all of the above-mentioned cases where the transaction while in form that of a sale, was held to be usurious and void, the assignee risked no loss of the sum advanced by him. The payment of such sum was secured either by reason of the fact that the interest assigned was a vested interest in an estate or by reason of a life insurance policy on the life of the assignor or by the giving to the assignee of a bond or mortgage or both as further security for the repayment of the sums so advanced.

In *Hartley* v. *Eagle Insurance Co.* (222 N. Y. 178, revg. 167 App. Div. 230) the alleged borrower made an assignment of his vested interest in an estate of an amount therein mentioned in consideration of an advance to him as therein stated. The court found that the assignor was a man of poor business ability and easily influenced by others and that he was in debt and without work at the time of the execution of the assignment. On the question of whether the transaction was usurious, the court determined the then present value of this vested interest pursuant to the Carlisle Tables of Mortality. Such computation indicated that the amount assigned exceeded the amount advanced with interest at six per cent to the time when the assignor would be entitled to his vested interest by $3,160. The trial court held that the transaction was a loan and void because usurious. The judgment of the trial court was affirmed by the Appellate Division. The Court of Appeals held that the

agreement could not be held usurious solely because the amount eventually to be received by the assignee was in excess of the then present value of the sum advanced by the assignee, calculated according to some table of mortality; that in such cases the intention of the parties must necessarily be determined; that no finding of fact had been made that the assignments and mortgage were made as a device for the payment of interest beyond the legal rate or that the parties had any intention of violating the usury statutes; for this reason the judgment in favor of the plaintiff was reversed and a new trial ordered. At pages 184 and 188 of the opinion the court said:

" I am of the opinion, therefore, that an agreement to pay an amount which may be more or less than the legal interest, depending upon a reasonable contingency, is not *ipso facto* usurious, because of the possibility that more than the legal interest will be paid. Otherwise no valid transfer or assignment of an interest dependent upon a life estate could be made for less than the full value. Such arrangements, however, will not be upheld in any case where the purpose is to evade the statutes against usury, no matter what form the transaction may take. [Citing cases.] The question in each case is, and necessarily must be, whether the agreement be fair and reasonable, or a mere device to evade the usury statutes. * * *

" In reaching the foregoing conclusion there is no intention of lessening the protection which the usury statutes were designed to afford. All that is here decided is that every loan or payment of less than the full present value, calculated according to a mortality table, for a remainder interest, is not *ipso facto* usurious and void. Whether usurious depends upon the intent of the parties, to be determined from all the facts and circumstances in each case. Such question has not here been determined and the defendant is entitled to have it determined before compelled to forfeit the amount which it loaned to the plaintiff."

*Brown* v. *Robinson* (224 N. Y. 301, revg. 173 App. Div. 583). Here the assignment was of a contingent interest in an estate but the payment of the sum so assigned was secured by a mortgage and by a life insurance policy on the life of the assignor for the benefit of the assignee. The cost of such policy was paid for by the assignor. The assignment was in form an absolute sale and transfer of the interest in the estate as therein mentioned. The Appellate Division held the transaction to be a loan and void because usurious. The basis for such determination was the excess sum to be received by the assignee over and above the amount advanced by him to the assignor as determined by the Carlisle Tables of Mortality. The

Court of Appeals held that it was apparent that the Appellate Division in that case had followed the same theory as it followed in *Hartley* v. *Eagle Insurance Co.* (*supra*). The judgment of the Appellate Division was reversed and that of the Special Term affirmed, wherein judgment was entered in favor of the plaintiff. Upon the importance of the question of whether in transactions of this kind the element of hazard assumed by the assignee is important in determining whether the transaction is to be deemed to be a loan and void because of usury, the court at pages 316 and 317 of the opinion said:

" Assuming, however, that this was so there remained other hazards. As has been pointed out there was no personal guaranty of any kind by Robinson, except the one that at the time the transfers were made in 1907 the clear value of each half of the estate out of which he was assigning the various sums which have been stated amounted to $140,000. There was no guaranty or covenant, as seems to be stated by respondent's counsel, that the estate would be equal to the amounts transferred to the appellant when the assignments became effective. There was, therefore, the danger that the estate through depreciation or bad management might sink to an amount less than the aggregate sums which were being transferred. One trustee was a non-resident and under no bonds; another trustee had been removed for improper investments; the third trustee who is now seeking to be discharged gave bonds. The history of the estate as disclosed in the present case shows that it would have been no fanciful assumption at the time the transfers were executed that the estate might depreciate below the amount required to make them good.

" In addition there was the uncertainty when the assignments of the two sum aggregating $85,000 out of Robinson's remainder under the second trust of his mother's will would become effective, for this was contingent not only upon his own life but upon the death of his father who was sixty-two years of age at the time the transfers were executed. There is no finding of the expectancy of the father's life at that time. It is, however, stated in the appellant's brief without contradiction so far as we can discover, that this expectancy according to the Carlisle tables was 13.31 years, and upon this presumption we assume the computations of the Appellate Division were based. The record before us shows that the father is a party and, therefore, alive after eleven years at the age of seventy-three years, and his expectancy of life on the basis of that age is still about eight years. It, therefore, may very well result that the computations. of the Appellate Division may prove erroneous and that the sums assigned not only not be in excess of the amount loaned with

interest, but considerably less," and at page 318 of the opinion on the question of the necessity of proof of usurious intent the court said: " The intent to take usurious interest requires such purpose on the part of the borrower as well as upon the part of the lender. (*Morton* v. *Thurber*, 85 N. Y. 550; *Guggenheimer* v. *Geiszler*, 81 N. Y. 293.) Such an intent when consummated draws after it not only civil penalties by way of forfeiture, but constitutes a crime. And before holding that a person has been guilty of such an offense it should have been clearly and decisively proved and found and not have been left to inference and implication."

*Matter of Uhrlaub* (234 App. Div. 847). I have examined the printed case on appeal in that matter. Various transfers and assignments were made by the assignor, which in form stated the same to be sales of a contingent interest in an estate. Some of these assignments were made to Mr. Holdeen, the sole owner of the stock of the Northchester Corporation, the assignee in the case before this court. No life insurance was taken by the assignee on the life of the assignor nor was any other security taken from the assignor to guarantee the payment of the sum so assigned and transferred. In one of the Holdeen assignments the assignee was Mary R. Hart and the assignee in the other two assignments was Northchester Corporation. From the case on appeal it appears that the instruments used for consummating these assignments were similar to the ones used in the case in question. It does appear, however, that in all of these transactions the assignor was represented by counsel and that the latter assignment was initiated by the attorney for the assignor to Mr. Holdeen by a telegram asking the latter the terms upon which he would purchase the balance of the Uhrlaub estate. Uhrlaub testified that in all of his talks with Mr. Holdeen, he had requested a loan on the same basis as the Stoddard assignment, so called. This was denied by Mr. Holdeen. The validity of this latter assignment was conceded by all parties and the amount due thereon was not in question in that proceeding, except for an additional sum alleged to be due the assignee for legal expenses which is not important here. The referee found conclusive evidence establishing the Washburn assignment, so called, as a sale and concluded that this tended to also establish the Holdeen assignments as sales, emphasizing the risk taken by the assignee in losing the chance of collecting if Uhrlaub failed to reach thirty-one years of age; the contingency upon which his interest in the estate in question would vest. Even though there was a letter in evidence from Mr. Uhrlaub to Mr. Holdeen and a reply thereto from Holdeen and a further letter from Mr. Uhrlaub's attorney to Mr. Holdeen in which reference was made as to a loan of $500 for Uhrlaub, the referee found

that there was no evidence connecting these letters with the transactions subsequently consummated. There was also a further letter from Uhrlaub to Holdeen in which inquiry was made with reference to a *sale* and a *loan* upon a share in an estate as therein mentioned. The referee held that the Holdeen assignments were sales and not loans, citing some of the cases hereinabove mentioned and particularly the fact that in *Hall* v. *Eagle Insurance Co. (supra)*, if the evidence was attended with some contingent circumstances by which the principal is put in hazard, the law of usury is not violated.

In *Difendarfer* v. *Dicks* (105 N. Y. 445, at p. 448) the court said: " mere inadequacy of price, unaccompanied by fraud, is not a ground for rescinding an executed contract, and that a party is not to be deprived of the benefit of a good bargain, merely because the other party may have acted in ignorance of the value of the thing sold, or of some material fact known to the purchaser, where no undue advantage is taken by the latter, and there are no special circumstances calling for disclosure. But the jurisdiction of chancery to rescind contracts for fraud or mutual mistake of material facts, is one of the best settled and most beneficent powers of a court of equity."

In *Stettheimer* v. *Killip* (75 N. Y. 282, at p. 287) the court said: " Courts of equity will sometimes give relief in cases of mutual mistake, where there is a failure of the subject-matter of the sale; but the law does not demand that both parties shall be upon the same footing as to knowledge or information. It requires that each one should be vigilant, and should abstain from stating any fact tending to mislead or deceive the other. If the parties stand upon a footing of equality and no fraud is committed by either, each must abide by the contract, and each is entitled to the benefit of his own sagacity."

From the foregoing cases involving the determination of whether an assignment, in form constituting an absolute sale of an interest of the assignor in an estate is in fact a sale or a loan, it clearly appears that the basis of these decisions holding such assignments to be loans and void because usurious was because repayment of the sum advanced by the assignee was provided for either by a life insurance policy on the life of the assignor or by the taking of additional security from the assignor. The cases of *Hartley* v. *Eagle Insurance Co. (supra)* and *Brown* v. *Robinson (supra)* specifically pointed out that a court is not justified in determining that the transaction is usurious by reason of the excess sum to be eventually received over and above that advanced, using the Carlisle Tables of Mortality in order to determine the then value of the eventual

amount to be received as of the date of the assignment. Where, on the contrary, under the terms of the assignment the assignee assumed the hazard of the eventual payment pursuant to the terms thereof, such as the fact that the assignor's prior death would defeat his interest in the estate, and no insurance was taken on the life of the assignor for the benefit of the assignee and no additional security was given the assignee to assure him payment of the sum advanced in case of the death of the assignor in the absence of specific evidence indicating that the transaction was intended by the parties as a loan, the courts have upheld the transactions as sales where the instruments in form indicated the transaction to be sales. The only statutory prohibition with respect to making assignments of an interest in a trust fund either vested or contingent is that contained in section 15 of the Personal Property Law and section 103 of the Real Property Law. That prohibition extends only to the transfer or assignment of the income of the personal property or the rents and profits of real property. The same sections expressly provide that the right and interest of the beneficiary of any other trust in real or personal property may be transferred. Accordingly, there would seem to be no basis for declaring every transfer of an interest in an estate under circumstances similar to those existing in the instant case a usurious loan, instead of a sale and, therefore, void under the usury statute. To do so would render ineffective the statutory authority above mentioned expressly authorizing the transfer of such an interest. This was recognized by the court in *Hartley* v. *Eagle Insurance Co.* (*supra*, p. 184) as hereinabove quoted.

In the instant case while the assignor was not represented by an attorney in initiating or consummating the assignment in question, he was in my opinion, for the reasons hereinabove mentioned, fully competent to understand the nature of the transaction as set forth in the instruments executed by him and must be presumed to have known that the same were intended to be and did in fact constitute a sale of the property therein mentioned. He had had previous transactions of this nature involving considerably greater sums and those transactions he knew to be loans, paid interest thereon as the same became due and eventually the principal thereof. He is not in a position of a young man making his first business venture. He knew that the interest which he assigned in his uncle's estate would never be received by the assignee if he died before reaching forty-three years of age on May 10, 1935. In fact the assignment particularly provided that the hazard that the assignor would never attain the age of forty-three years of age was assumed by the assignee. The securities which he purported to sell and assign have never been in default in the payment of interest from the date of the

assignment. The income on the securities until May 10, 1935, was specifically reserved to him and not to the assignee. Not until after he reached forty-three years of age and his interest in this estate became vested did he ever take up with the assignee the matter of the payment of any sum to the assignee either principal or interest, despite the fact that during all of this time he had had the income on the securities assigned, which would have been more than sufficient to have paid the interest on the sum advanced by the assignor to him, had the transaction been regarded either by him or the assignee as a loan. Nor did the assignee during all this period ever request any payment from the assignor of any interest or principal. Under these circumstances, I am unable to find any basis upon which to determine that any intent existed either on the part of the assignor or the assignee that this transaction was other than it purports to be, namely, a sale and assignment to the assignee of the securities therein mentioned, or in case of their prior sale of an interest in the estate determined as provided in the assignment. To do otherwise presupposes that a stranger did on October 3, 1932, advance to Mr. Schneider $2,100, no part of which nor the interest thereon was to be paid until May 10, 1935, and then only in the event that Mr. Schneider was then living. The credulity of such a statement from the average lay person would at least be doubtful. Coming as it does from a man of mature years and with many years experience in the financial district of Wall Street it seems a bit fantastic. It appears to me that the assignee took a gambler's chance upon the eventual recovery of the amount advanced by him in this matter without any security from the assignor to assure its eventual payment or a life insurance policy upon the life of the assignor. The longevity of the assignor has resulted in the assignee obtaining a good bargain. Had the assignor died before May 10, 1935, the assignee would have been out of pocket $2,100. While I am fully conscious of the fact that the duty of the courts is to look into transactions of this nature to ascertain whether there was an intent on the part of the parties concerned to make a usurious loan, and if so to declare it to be such regardless of the form of the transaction, in the instant case and for the reasons above mentioned, I find no basis in the testimony of the interested parties to indicate an intent to perfect a usurious loan. On the contrary, the circumstances indicate that this was intended to be what it purports to be, namely, a sale of the securities mentioned in the assignment upon the terms therein described, and I so find.

As to the further objection of the assignor that the assignment in question was obtained by fraud and duress and was and is an unconscionable, inequitable agreement and unenforcible at law or in

equity, there is no evidence to substantiate this allegation, for the reasons hereinabove mentioned. In this connection and having in mind the comments in the brief of the attorney for the assignor with respect to previous transactions of this nature had by the assignee and Mr. Holdeen and the methods employed by them in such transactions, I believe the comment of the court in *Brown* v. *Robinson* (*supra*, at p. 312 of the opinion on a similar situation) is *apropos*.

The answer of the assignee indicates that it elects to receive the securities described in said assignment which still remain in the hands of the trustee and, as to any such securities which have been sold, the sum representing the proceeds of the sale thereof pursuant to the terms of the assignment. The original and supplemental account of the trustee were both filed in this court on October 16, 1935. In both of these accounts all of the Atchison, Topeka and Sante Fe railroad bonds were shown to be in the hands of the trustee, but the United States Government First Liberty four and one-quarter per cent bonds of the par value of $400 are shown to have been previously sold. Thereafter, pursuant to a stipulation executed by all parties and filed in this court on December 30, 1935, authority was given the trustee to sell such part of said Atchison, Topeka and Sante Fe railroad bonds as was necessary in the opinion of the trustee for the purposes therein mentioned. The decree may, therefore, provide that the trustee shall deliver to said assignee such of the Atchison, Topeka and Sante Fe railroad bonds described in the assignment as are now in the possession of the trustee and in addition the trustee shall pay to said assignee from the trust fund held for the benefit of said assignor a sum equal to the net sale price of any of such railroad company bonds as have been previously sold and the net sale price of the United States Government First Liberty four and one-quarter per cent bonds, described in the assignment. The trustee shall further pay to said assignor as liquidated damages for the services, costs and disbursements incurred by the assignee by reason of this proceeding, pursuant to the terms of said assignment, an amount equal to five per cent of the present market value of any such securities so directed to be delivered to the assignee and five per cent of any sum so directed to be delivered in cash by said trustee to the assignee. This sum to be received and accepted by the assignee in lieu of any other statutory costs and disbursements to which said assignee might otherwise have been entitled to in this proceeding.

Prepare decree accordingly.