H. Ridgely Bullock, Jr., Plaintiff, *v.* Morris S. Becker et al., Individually and Doing Business as Jay Trading Co., et al., Defendants.

Morris S. Becker et al., Individually and Doing Business as Jay Trading Co., Third-Party Plaintiffs, v. Aaron Kozak et al., Third-Party Defendants.

Supreme Court, Special Term, New York County, November 22, 1965.

. *Marshall, Bratter, Greene, Allison & Tucker* (*Morton S. Robson* of counsel), for plaintiff. *Kaye, Scholer, Fierman, Hays & Handler* (*Peter Morrison* of counsel), for defendants and third-party plaintiffs. *Robert J. Fitzsimmons* and *Copal Mintz* for third-party defendants and for Samuel B. Weiss, defendant. *Praeger & Sacher* (*Leo Praeger* of counsel), for Nathan Silverman, defendant.

George Tilzer, J. Plaintiff is the owner of future interests in two trust estates which are distributable to him at three stages. He received a distribution in 1960 of one third of the principal in each estate. A second was to be made on June 16, 1964 and the final one third is to be made on June 16, 1969. Plaintiff is a college graduate, a sophisticate with some experience in business affairs. In 1960 and later he was in need of funds in addition to substantial annual benefits received from the estates. Over a period of time he made a series of assignments of portions of his future interests. There was also in each instance the assignment of insurance policies. He has instituted four actions against various assignees and successors. He claims and contends that while absolute sales in form, the transactions were loans and usurious. He seeks their cancellation and return and reassignment of the policies. In each action he has moved for summary judgment and in this action the defendants and third-party plaintiffs have moved for summary

judgment dismissing the amended complaint or for alternate relief. In each transaction the documents recite plaintiff's understanding that it is a sale, not a loan, so understood and that plaintiff is without personal liability, that the assignment is not made as collateral securing a loan and is not subject to rescission or redemption and the assignees' only recourse is to the estates.

The concept of the vulnerability of the transactions is sound. In examining each transaction the court must determine '' whether the intent which pervaded it was one which violated the statute ''. (*Hall* v. *Eagle Ins. Co.*, 151 App. Div. 815, 826.) In *Union Dime Sav. Inst.* v. *Wilmot* (94 N. Y. 221, 227), while there was '' no evidence whatever that the transaction took the form it did as a cover for usury '' the court stated that '' in one sense it took this form for the purpose of escaping usury. But the parties had a perfect right to deal with each other with the usury laws before their eyes, and to so shape the transaction as to avoid the condemnation of those laws ''. In *Matter of Meadow Brook Nat. Bank* (N. Y. L. J., Nov. 5, 1965, p. 19, cols. 5, 6) the court stated:

'' A sale is the transfer of general or absolute interest in property for a price in money. A loan is the delivery of a sum of money to another under a contract for the return of an equivalent amount at a future time with or without an additional sum agreed upon for its use, and if such is the intent of the parties, the transaction will be deemed a loan regardless of its form (Milana v. Credit Discount Co., 163 P. 2d 869). The intent of the parties govern (Thomas v. Hunt Mfg. Corp'n, 269 P. 2d 12; In re Smith, 280 App. Div. 947, affd. 305 N. Y. 764; Matter of Bechtoldt, 159 Misc. 725).

'' The court finds that the parties intended a sale of a fixed amount of the trust fund and not a loan. The assignment is to be paid only by the estate and the assignor is not personally responsible for the repayment of the consideration received, nor for the payment of the assignment. Therefore, usury is not involved since the transaction was a sale. 'Although the bargain may have been hard, the transactions cannot be avoided as being unconscionable ' (In re Smith's Will, supra).'' That matter was decided after trial. Summary judgment simulates trial and therefore the question is whether plaintiff has submitted any proof capable of establishing any merit in his claim and particularly with respect to the question of intent by testimony or documentary proof outside the transaction documents.

To begin with, the actions are concerned with most in number and amount of the transactions between plaintiff and several

assignees. There were other transactions not directly involved. It is conceded on all sides for the purpose of these motions that all transactions took the form of absolute sale. Further, plaintiff concedes he had been unable to secure from any banking institution any loan to be secured by the assignment of the future interests, although such lending institutions, no doubt, were also aware of the claimed lack of risk, the competence of the trustees and of all other elements affecting the risk. He sought advances and was informed that no loans would be made. He was represented in each instance by counsel, a member of the law firm now representing him. All parties other than the plaintiff deny there was any desire or purpose on their part to make a loan or that there was any discussion of a loan; that from the inception of negotiations in each instance a sale was demanded. It appears that for the most part those who acquired future interests and were the real parties in interest in such acquisitions, were traders in future interests. Plaintiff states merely that he knew he was making a sale but the sale was a cloak to disguise usury. In his brief he makes some statement that the loan was to be repaid in four years, but no such statement is found in his affidavit. There is no mention of duration, interim payments, interest, installment payment, amount or time. There is no proof of coercion, fraud or other infirmity. The burden is on the plaintiff to establish intent to make a loan by more than mere preponderance (*Streeter Constr. Co.* v. *Kenny,* 209 App. Div. 697), by "clear, unequivocal and convincing" proof (*Bascombe* v. *Marshall,* 129 App. Div. 516, affd. 198 N. Y. 538), and by proof, that is clear and decisive (*Brown* v. *Robinson,* 224 N. Y. 301).

In *Matter of Smith* (280 App. Div. 947, affd. 305 N. Y. 764) it appears that the trust beneficiary was 35 years of age, having an interest which would vest on the death of a grandmother 81 years of age and ill. The beneficiary received $75,000 for an assignment of $210,000 of the contingent interest. The grandmother died two months later. In reversing the determination of usury, the Appellate Division stated (p. 948): "There was no evidence or assertion of actual fraud or other manner of imposition, objectant and the corporation having been represented by counsel of long standing; and there was no duress by force of circumstances, it being established that objectant had a combined annual income of $37,000 from her grandfather's and her mother's estates. Although the bargain may have been hard, the transactions cannot be avoided as being unconscionable. * * * These were mature people dealing at arm's length and each was represented by an

attorney when executing formal documents embodying their transactions.''

There was indeed considerable resort to words purporting to effectuate a loan in *Matter of Bechtoldt* (159 Misc. 725, 729–730) where the court there stated:

'' We thus have a transaction where an alleged borrower makes an application to a broker's office for a loan; an interview is had with the proposed lender; the alleged borrower asks whether the proposed loan can be made; the alleged lender advises he will consider the matter; no other conference is had between the parties; the alleged lender testifies that he said nothing at this conference to indicate that the transaction was to be a loan; while the money in form is advanced by a corporation, we may treat this as immaterial since the alleged lender admits that for all purposes the two corporations involved are owned by himself; the alleged lender, an attorney, drafts the papers hereinabove mentioned and in form they purport to be an absolute sale and assignment of specific securities therein described for the consideration therein mentioned  *  *  *  the alleged borrower asks the person representing the alleged lender whether he could repay the loan prior to May 1, 1935, if he secured the money and receives the reply, ' If you can, come and see us; ' there is no testimony that anything was said about the interest rate; from the date of this assignment, October 3, 1932, to May 10, 1935, the alleged borrower never makes any offer to pay interest on the sum received or any part of the principal thereof. The alleged borrower now questions the validity of this assignment upon the ground that it is a usurious agreement; that it was obtained by fraud and duress and was and is an unconscionable, unequitable agreement and unenforcible at law or in equity.

'' The question to be determined is whether the transaction in question was a loan or sale. This can only be determined by ascertaining the intent of the parties as to the nature of the transaction, either from the testimony or, in case of conflict thereof, from the nature of the transaction itself.  *  *  *  Nor, having in mind the business experience of the alleged borrower and particularly his previous experience with actual loans for which he made previous assignments of his interest in this same trust fund, can I find that the transaction was intended by him as a loan ''.

In *Matter of Kohler* (N. Y. L. J. March 4, 1947 [DELEHANTY, Surr.], affd. 273 App. Div. 886, mot. for lv. to app. den. 297 N. Y. 1036) assignments were made aggregating $100,000 of the assignor's contingent remainder for a consideration of $7,200.

The life tenant died three and one-half years thereafter. In his opinion, the Surrogate stated:

" The court is earnestly pressed by the remainderman to find that the transactions were loan transactions despite their form. In support of this argument stress is laid upon the fact that insurance policies on the life of the remainderman were issued either directly in connection with the transactions or so closely connected therewith in point of time as to require the court to treat the insurance policies as integral parts of the transactions. There is no dispute that under certain conditions the insurance policies could have produced nothing for the beneficiaries thereof — the assignees. It is conceded that the remainderman paid none of the premiums either directly or indirectly. It is conceded, too, that the remainderman had no personal liability to repay to the assignees any part of the moneys paid by them to the remainderman. In these circumstances the court can find nothing in the fact of the existence of insurance policies to warrant any different finding as to the intrinsic nature of the transactions with the assignees.

" The court is also asked to say that because the consequence of the remainderman's act is to require him in the sequel to pay sums disproportionate to the amount received by him the transactions should be set aside though they be held to be transactions of assignment. The court can find no authority for that course of conduct. It cannot after the event appraise a risk which the parties appraised at a time when they dealt at arm's length with each other and at a time when the remainderman was represented by competent and independent counsel of his own choosing."

In the situation here it cannot be truly said there is any controversy concerning the facts and circumstances leading to the execution of the documents of conveyance which are replete with affirmations of sale and disavowals of loan. Plaintiff urges this repetitive language evidences a purpose to deceive and to guise, for honest purpose to purchase should require only simplest and most straightforward language of conveyance. Yet the initial desire of the plaintiff to obtain a loan in the particular circumstances may be said also to invite assurance against future attack upon alleged vulnerable documents. The fact need not be evaded that the defendants were confronted with two possibilities and they made a choice in words loud and clear. It is suggested that on the occurrence of an event in 1964 plaintiff was angered to vengeful desire. Nevertheless, it is perceived there is an underlying honesty in plaintiff's failure to cross the threshold and to say forthrightly that the written word is false. These and

other speculations arise not because of words unclear, but rather because of plaintiff's desire to substitute an unexpressed intent. In any case, it is not necessary to choose among these theories for another and most significant piece of evidence exists which, in the opinion of the court, forestalls the present attempt to withdraw from a bargain between experienced adults at arm's length, all represented by counsel. On the occasion of each transaction, plaintiff's counsel, over the firm signature, furnished a letter which in the strongest language and as to each detail, affirmed the transaction as a sale and confirmed plaintiff's understanding of its nature and his affirmation and acceptance thereof. Not an iota of exception or objection is uttered by counsel. There is the further fact, too, that plaintiff's income tax return for the year 1960 had reflected the transactions then concluded as sales for the purpose of computation of capital gains and losses. Upon the basis of this submission, the court can conclude only that plaintiff relies on the impact of the facts, figures and circumstances as they are disclosed exclusively by documents and argumentation thereon. Nothing outside those documents, nothing significant at least, is urged to support plaintiff's heavy burden of proof and since the assembling of the proofs, not argument, is essential, plaintiff has failed to establish that burden or to create any basis on which to establish merit.

In this posture, plaintiff's motions for annulment of the sales and assignments of future interests and assignments of policies in each case must be denied. And the motion of the defendants and third-party plaintiffs for judgment dismissing the amended complaint must be granted to the extent they seek judgment dismissing the amended complaint as to the claims for annulment of assignments. Their motion for relief in the alternative is not reached. On plaintiff's motions, the court may award judgment and the defendants in each case are entitled to judgment dismissing the amended complaint insofar as it seeks annulment of such assignments. Other issues affecting the policies remain. It is not clear whether the assignments thereof were absolute, whether the plaintiff reserved ultimate right to reassignment of the policies upon distribution from the assets and by whom premiums were paid as affecting those questions. Those issues are severed for trial and determination. The motions are disposed of accordingly.